Craig HUGHES, Defendant
Below, Appellant,

v.

STATE of Delaware, Petitioner
Below, Appellee.

No. 168, 1994.

Supreme Court of Delaware.

Submitted: Oct. 19, 1994.

Decided: Dec. 22, 1994.

Order Clarifying Decision on
Denial of Reargument Jan. 30, 1995.

Bernard J. O'Donnell, Asst. Public Defender, Office of the Public Defender, Wilmington, for defendant.

Richard E. Fairbanks, Jr., Chief of Appeals Div., Dept. of Justice, Wilmington, for petitioner.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court En Banc.

WALSH, Justice:

This certification proceeding comes before the Court pursuant to Article IV, Section 11(9) of the Delaware Constitution and Supreme Court Rule 41. The Family Court has certified five questions of law which this Court accepted by order dated May 19, 1994. Briefing and oral argument before the Court *en Banc* followed. This is the decision of the Court on the certified questions.

I

As required for certification proceedings, the facts underlying the certified questions are undisputed. The defendant, Craig Hughes ("Hughes"),[1] was arrested on November 6, 1993, for receiving stolen property worth over $500 (11 *Del.C.* § 851) and second degree conspiracy (11 *Del.C.* § 512). The charges against Hughes would constitute felonies if he were an adult. Because Hughes was seventeen years old at the time of his arrest, he was subject to the jurisdiction of the Family Court. *State v. Connors*, Del.Super., 505 A.2d 1301, 1302 (1986). Accordingly, Hughes was arraigned in February, 1994, and his case scheduled for trial in the Family Court on November 1, 1994.

Under the statutory scheme in place at the time of his arrest, Hughes fell under the original jurisdiction of the Family Court with the possibility that he could be transferred to Superior Court if, following an amenability hearing, the Family Court determined that Hughes was not amenable to its processes.

---

1. A pseudonym adopted to preserve the privacy of the minor defendant.

10 *Del.C.* § 1010(c) [2]. This statutory scheme was altered subsequent to Hughes' arrest, however. On April 11, 1994, Senate Bill 140 was signed into law. Under the language of this amendment, "if a child reaches his eighteenth birthday prior to an adjudication on a charge of delinquency arising from acts which would constitute a felony," the Family Court must automatically transfer the matter to Superior Court. 69 *Del.Laws* c. 205.

Hughes turned eighteen years old on September 24, 1994, and is therefore subject to the statute as amended. In addition, at least forty-five other cases pending before the Family Court involve children who either have reached the age of eighteen or may reach that age before their cases are adjudicated in the Family Court. Because of the great number of cases affected by the statutory amendment, and its attendant consequences upon the jurisdiction of the Family Court, the following questions implicating the amendment's construction, application, and constitutionality were certified and accepted by this Court:

1. Whether the amendment to 10 *Del.C.* § 1002, effective as of April 11, 1994, applies to all relevant cases in which the offenses are committed on or after the effective date of the amendment, or to all cases pending in the Family Court as of the effective date of the amendment in which the respondent has already turned 18 years of age or will turn 18 years of age while awaiting trial.

2. Whether extended jurisdiction of the Family Court over juveniles beyond the age of 17, pursuant to 10 *Del.C.* § 928, is applicable in cases where the juvenile turns 18 while awaiting trial in the Family Court or becomes moot pursuant to the recent amendment to 10 *Del.C.* § 1002.

3. Whether the Attorney General must obtain an indictment before proceeding to try the defendant on the charges once the case is transferred to the Superior Court pursuant to 10 *Del.C.* § 1002.

4. Whether the statutory amendment violates the constitutional guarantee of equal protection of the laws.

5. Whether the statutory amendment violates the constitutional guarantee of due process of law.

We have concluded that the statutory amendment violates the constitutional guarantees of equal protection of the laws under the Federal Constitution and due process of law under both the Federal and Delaware Constitutions. U.S. Const. amend. 14; Del. Const. art I, § 7.[3] Because we answer question numbers four and five in the affirmative, the remaining questions are rendered moot and, accordingly, we decline to answer them. *See State v. Ayers*, Del.Supr., 260 A.2d 162, 170 (1969).

## II

Before addressing the merits of Hughes' constitutional claims arising under the due process and equal protection clauses, a review of the statutory framework delineating the jurisdiction of the Family Court, and our prior case law interpreting that scheme, is necessary to appreciate the circumstances which precipitated the enactment of the statutory amendment at issue.

Since its inception in 1945, the Family Court has been conferred almost exclusive jurisdiction over those under the age of eighteen charged with violations of State law. 10 *Del.C.* § 921; *State v. J.K.*, Del.Supr., 383

---

**2.** Pursuant to 69 Del.Laws, c. 335, effective July 8, 1994, former Part A of Subchapter III of the Family Court Act, containing §§ 930 to 939, was redesignated as present §§ 1001 to 1011. Accordingly, in this opinion, we will refer to the pertinent statutory provisions as currently designated.

**3.** Article I, section 7, of the Delaware Constitution provides that no person shall be deprived of property except "by the law of the land." We have previously held that the phrase "due process of law" as contained in the Federal Consti-

tution and the phrase "law of the land" as used in our State Constitution have substantially the same meaning. *Goddard v. State*, Del.Supr., 382 A.2d 238, 340 n. 4 (1977) (citing *Opinion of the Justices*, Del.Supr., 246 A.2d 90 (1968)). In comparison, the Delaware Constitution contains no equal protection clause *per se*. We find it unnecessary, in this case, to determine whether the equal protection concept inures as a matter of due process under the Delaware constitution. *But see Attorney General of Md. v. Waldron*, Md. App., 426 A.2d 929, 940–41 (1981).

A.2d 283, 285 (1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1882, 56 L.Ed.2d 392 (1978).[4] Under section 921(2)(a), the Family Court is vested with original jurisdiction over "[a]ny child charged in this State with delinquency or by having committed any act or violation of any law of this State...." The statutory scheme evidences a legislative intent, with some exceptions, to treat child offenders differently from adult offenders. *Fletcher v. State,* Del.Supr., 409 A.2d 1256 (1979). In its recognition that children generally require distinctive treatment, the General Assembly has established a dual judicial system so that children and adults are segregated and adjudicated separately. To that end, the Family Court Act was enacted to provide uniform jurisdiction, policies and procedure by creating a statewide Family Court system. *Wife, S. v. Husband, S.,* Del.Ch., 295 A.2d 768 (1972). The function of the Family Court in the Delaware dual system is expressly set forth in the Act:

### § 902. Purpose; construction.

(a) In the firm belief that compliance with the law by the individual and preservation of the family as a unit are fundamental to the maintenance of a stable, democratic society, the General Assembly intends by enactment of this chapter that 1 court shall have original statewide civil and criminal jurisdiction over family and child matters and offenses as set forth herein. The court shall endeavor to provide for each person coming under its jurisdiction such control, care, and treatment as will best serve the interests of the public, the family, and the offender, to the end that the home will, if possible, remain unbroken and the family members will recognize and discharge their legal and moral responsibilities to the public and to one another.

(b) This chapter shall be liberally construed that these purposes may be realized. 10 *Del.C.* § 902.

Thus, in direct contrast to the criminal nature of an adult prosecution in the Superior Court, an adjudication of delinquency in the Family Court is a *civil* proceeding. *G.D. v. State,* Del.Supr., 389 A.2d 764, 765 (1978); *see also State v. Wilson,* Del.Supr., 545 A.2d 1178, 1181 (1988) ("By its creation of the Family Court, the General Assembly recognized the unique role that Court is called upon to play through the application of its civil processes in the resolution of offenses committed by children."). The civil nature of a proceeding in Family Court removes the stigma of *criminality* which is inherent in an adult prosecution in Superior Court. Accordingly, the Family Court Act provides that "no child shall be deemed a criminal by virtue of an allegation or adjudication of delinquency...." 10 *Del.C.* § 1002. We have previously summarized the statutory scheme as follows:

> The proceedings against a child are not criminal in concept or in practice. Indeed, the child is not even charged with a 'crime' no matter what the conduct. *See* 10 *Del.C.* § [1002]. In the Family Court the charge is a general one of 'delinquency.' § 921(1)(2)a.... State policy in a proceeding against a child in the Family Court is to make it entirely a part of the Court's 'civil jurisdiction,' § 921....

*State v. J.K.,* 383 A.2d at 286.

Notwithstanding the societal policy to proceed against children in a civil setting, the General Assembly has provided two statutory exceptions under which children may be criminally prosecuted at the adult level. 10 *Del.C.* § 1010. First, under section 1010(a)(1), children, regardless of age, who are charged with the most serious felonies, as designated by the statute, are prosecuted as adults. Second, under section 1010(a)(2), the Family Court has the discretion to transfer the case of a child over sixteen years of age to the Superior Court for trial as an adult if the court concludes that the child is not amenable to the Family Court processes. Under the statute, the Family Court conducts a so-called amenability hearing, initiated upon motion of the Attorney General or

---

4. In the past, we have used the terms "children," "minors" and "juveniles" when referring to those persons who have not yet reached their eighteenth birthday. For purposes of this opinion, we refer to such individuals as "children" because this term is defined and used throughout the Family Court Act and the amendment in question uses the term "child." *See* 10 *Del.C.* § 901(3) " 'Child' means a person who has not reached his 18th birthday."

by the court *sua sponte*, to determine independently whether the child will benefit from the "rehabilitative processes of the Court." § 1010(c). In its inquiry, the Family Court may consider six enumerated, nonexclusive criteria. *Id.* If the Family Court finds that the child is amenable, the court retains jurisdiction over the child. Upon a finding of nonamenability by the court, however, the child is referred for trial as an adult in the Superior Court or any other court with jurisdiction over the offense.

The statutory scheme provides an additional judicial safeguard to children alleged to have either committed a designated felony or those found by the Family Court to be nonamenable. In 1971, the State Assembly created a mechanism, now known as the "reverse amenability" process, in which those children coming within the jurisdiction of the Superior Court may be transferred to the Family Court when adjudication in that forum is proper. 58 *Del.Laws* c. 116, now 10 *Del.C.* § 1011.[5] Under section 1011(a), the Attorney General, without leave of Court, may transfer to the Family Court those cases involving either designated felony offenses or those children found nonamenable when a transfer would best serve "the interests of justice."

The defendant may exercise a concomitant right under section 1011(b) and may petition the Superior Court for a hearing to determine amenability. The statute permits, but does not require, an evidentiary hearing upon application of a child to consider several enumerated factors and other relevant considerations in deciding whether the interests

of justice would best be served by the transfer of the child to Family Court. The reverse amenability hearing thus ensures a judicial determination of amenability which is premised upon the nature of the offense as well as the character of the child. *State v. Anderson,* Del.Super., 385 A.2d 738, 741 (1978).

This Court explicitly upheld the constitutionality of the reverse amenability process in *Marine v. State,* Del.Supr., 607 A.2d 1185 (1992), *cert. dismissed,* — U.S. ——, 113 S.Ct. 28, 120 L.Ed.2d 952 (1992) ("*Marine I* "). In *Marine I,* we held that the reverse amenability process, which was required by legislative enactment, accords the defendant a judicial counterweight to any arbitrary charging authority by granting the Superior Court the power to evaluate the basis for the charge against the child. *Id.* at 1209. Our decision in *Marine,* which was based on the statute, apparently provided the impetus for the enactment of the statutory change now under review. Because the application of the statute in that decision appears to be misunderstood, the *Marine* holding bears analysis.

Factually, *Marine* involved a fourteen year old who was indicted for first degree murder. Because Marine was charged with a designated felony, he fell within the jurisdiction of the Superior Court. §§ 921(2)a, 1010(a). Marine sought transfer of his case to Family Court pursuant to the reverse amenability process under the present section 1011(b). The Superior Court conducted an evidentiary hearing on Marine's amenability after which it denied his motion for transfer. Marine

---

5. The reverse amenability statute provides:

§ 1011. **Transfer of cases from Superior Court to Family Court.**

(a) In any case in which the Superior Court has jurisdiction over a child, the Attorney General may transfer the case to the Family Court for trial and disposition if, in his opinion, the interests of justice would be best served.

(b) Upon application of the defendant in any case where the Superior Court has original jurisdiction over a child, the Court may transfer the case to the Family Court for trial and disposition if, in the opinion of the Court, the interests of justice would be best served by such transfer. Before ordering any such transfer, the Superior Court may hold a hearing at which it may consider evidence as to the following factors and such other factors which, in

the judgment of the Court are deemed relevant:

(1) The nature of the present offense and the extent and nature of the defendant's prior record, if any;

(2) The nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any; and

(3) Whether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court.

(c) In the event the case is transferred by the Superior Court under this section, the case shall proceed as if it had been initially brought in the Family Court, and the Family Court shall have jurisdiction of the case, anything to the contrary in this chapter notwithstanding.

was eventually convicted in the Superior Court of second degree murder—the charge for which he had been originally arrested. On appeal, Marine claimed, *inter alia*, that he was denied due process and equal protection of the law because of the unequal treatment he received when compared with other children found guilty of the same crime in the Family Court, *i.e.*, he was charged with first degree murder as an adult but convicted of an offense (second degree murder) which was not transferrable to Superior Court under section 1010.[6] Marine also claimed that the Superior Court erred in its analysis of the section 1011 factors.

After an exhaustive review of the Family Court Act, this Court held that the Delaware statutory scheme, which permitted the Superior Court to convict a child as an adult for an offense which would result in an adjudication of delinquency in the Family Court, did not violate the guarantees of due process or equal protection. *Marine I*, 607 A.2d at 1209. However, without reaching the correctness of its result, we found that the Superior Court erred in its application of the current section 1011 by failing to make specific factual findings into the "nature of the present offense" as expressly required by the statute. *Id.* at 1211.

Specifically, we held that section 1011 required the Superior Court, in a proceeding similar to a "proof positive" hearing at which a defendant's right to bail is determined when charged with a capital offense, to consider whether the State can establish a *prima facie* case against the defendant. *Marine I*, 607 A.2d at 1211–12. A *prima facie* case is established if the evidence demonstrates that there is a fair likelihood that the defendant may be convicted on the charge. *Id.* at 1212 n. 17. Accordingly, we vacated the judgment of the Superior Court and remanded, with jurisdiction retained, so that Marine would receive a reverse amenability hearing in which the court properly considered section 1011(b)(1). *Marine I*, 607 A.2d at 1212. Essentially, our mandate required a

"judicial examination of the evidentiary justification for the charging decision . . . ." *Id.*

Upon remand, the Superior Court concluded that the State did not have a fair likelihood of convicting Marine of first degree murder and that Marine's request to have his case transferred to Family Court should have been granted as required by the statute upon such a finding. On appeal, this Court affirmed. *Marine v. State*, Del.Supr., 624 A.2d 1181 (1993) ("*Marine II* "). Because the statute provided that the Superior Court could not hold a trial over any fourteen year old child accused of second degree murder, the Superior Court was divested of jurisdiction of a criminal prosecution against Marine by its own finding. Moreover, because Marine was over nineteen years of age at the time of the *Marine II* decision, under the statute, the Family Court also lacked jurisdiction over Marine because he was then an adult. *Marine II*, 624 A.2d at 1189. Accordingly, this Court was required to direct the Superior Court to vacate Marine's sentence and conviction and to order his release from custody. *Id.*

The State then moved for reargument, contending that Marine could be retried for either first degree murder or second degree murder in the Superior Court. In denying reargument, we held that Marine could not be retried in the Superior Court for first degree murder because the Superior Court had determined, and this Court had affirmed, that the State did not have a fair likelihood of convicting him of that charge, thus precluding further litigation of the issue through the doctrine of collateral estoppel. 624 A.2d at 1190. Further, a second prosecution of Marine in the Superior Court for second degree murder was barred by the statute because the Family Court had exclusive jurisdiction over a fourteen year old child charged with that offense. *Id.* at 1190–91.

On April 11, 1994, Senate Bill 140 was signed into law to amend 10 *Del.C.* § 1002 by

6. As noted earlier, Marine was fourteen years old at the time of his arrest. Had Marine been tried on the charges for which he was arrested, murder second degree, the Family Court would have had exclusive jurisdiction over him. On the other hand, if Marine was sixteen years of age when charged with the same crime, he would have been subject to a transfer to Superior Court upon a finding of nonamenability by the Family Court under section 1010(c).

adding a paragraph to the existing statute. The statute, as amended, provides:

§ 1002. **Delinquent child not criminal; prosecution limited.**

Except as provided by § 1010, no child shall be deemed a criminal by virtue of an allegation or adjudication of delinquency, nor shall a child be charged with or prosecuted for a crime in any other court. In this Court the nature of the hearing and all other proceedings shall be in the interest of rather than against the child. Except as otherwise provided, there shall be no proceedings other than appellate proceedings in any court other than this Court in the interest of a child alleged to be dependent, neglected, or delinquent.

*However, if a child reaches his eighteenth birthday prior to an adjudication on a charge of delinquency arising from acts which would constitute a felony were he charged as an adult under the laws of this State, then the Family Court shall retain jurisdiction for the sole purpose of transferring the matter to the Superior Court for prosecution as an adult. Any such transfer under this Section shall not be subject to § 1011 of this title.*

69 *Del.Laws* c. 205 (emphasis added).

The statutory amendment was drafted in direct response to our ruling which denied the State's motion for reargument of the *Marine* decisions. *Marine II,* 624 A.2d at 1190–91. *See* 69 *Del.Laws* c. 205 (Synopsis). The stated purpose for the amendment is to ensure that a Delaware court will always have jurisdiction over felony child offenders. 69 *Del.Laws* c. 205 (Synopsis). The General Assembly apparently perceived that the *Marine* decisions had created a "jurisdictional gap" which it undertook to close by requiring that all children who are charged with a felony offense be tried in the Superior Court if they reach eighteen years of age before their cases are adjudicated in the Family Court.

The statute also alters the existing scheme by preventing the defendant from obtaining judicial review of an important aspect of the amenability process. First, by mandating that those offenders falling under its purview be automatically transferred to Superior Court, the statute clearly intended to dispense with the right of the accused to seek a judicial determination under section 1010. Moreover, the provision explicitly eliminates the reverse amenability process in the Superior Court under section 1011 for those children transferred to that court for trial as adults.

Hughes argues that the statutory amendment violates his rights of due process and equal protection because he has been deprived of the essential protection afforded by the reverse amenability process. U.S. Const. Amend. 14; Del. Const. art. I, § 7. Hughes claims that this procedure is designed to safeguard him from the unfettered authority of the State to impose potential arbitrary or capricious charging decisions, a practice viewed as unconstitutional by this Court in *Marine I.* The statutory amendment, it is argued, eliminates the independent examination into the basis of a felony charge against a child and vests the prosecution with the authority to determine jurisdiction over those children who will reach age eighteen pending trial in Family Court. We agree with Hughes that the elimination of the reverse amenability process is violative of his constitutional rights.

III

Hughes concedes that the age-based distinction drawn by the amendment does not pertain to a fundamental right or suspect class. *See Marine I,* 607 A.2d at 1207. Hence, our standard of review for the statute's constitutionality is well settled.

In determining whether a statutory classification, not involving a suspect class or fundamental right, violates the equal protection [or due process] clause, we presume that the distinctions so created are valid. 'A statutory discrimination or classification will not be set aside if any state of facts reasonably may be conceived to justify it.'

*Marine I,* 607 A.2d at 1207 (*quoting Traylor v. State,* Del.Supr., 458 A.2d 1170, 1177 (1983)).

The General Assembly is endowed with broad authority as a policy-making body

to classify child offenders based on their age for purposes of selecting the appropriate court for adjudication. "It is no novelty in our law to require that for certain crimes juveniles shall be tried as adults in the Superior Court." *Ayers*, 260 A.2d at 171. This power over classification is not without constitutional limits however. The legislative scheme must bear some rational relationship to the purpose for which it was enacted. We have previously described the State's discretionary authority to treat children as adults under the Constitution as follows:

> The discretion of the General Assembly in setting policy under its police power is, however, not absolute. It may not be arbitrary or capricious: it must be reasonable. When the power is exercised to classify for purpose of trial for crimes, as this is, then the classification must be founded on differences reasonably related to the purposes of the statute in which the classification is made.

*Ayers*, 260 A.2d at 171.

■■■ Equal protection does not require identical treatment for all individuals within a class but, rather, when distinctive treatment for individual class members does occur, there must be a reasonable basis for the distinction. *Marine I*, 607 A.2d at 1207; *Mills v. State*, Del.Supr., 256 A.2d 752, 756 (1969). For the distinction to be so unreasonable as to be discriminatory and unconstitutional, the distinction must be "patently arbitrary and bear[ ] no rational relationship to a legitimate government interest." *Gotleib v. State*, Del.Supr., 406 A.2d 270, 275 (1979); *Marine I*, 607 A.2d at 1207. Similarly, due process also requires that a statutory provision be rationally related to its purpose. *State v. Hobson*, Del.Supr., 83 A.2d 846, 847 (1951).

As noted earlier, the constitutionality of the Delaware statutory scheme establishing age-based distinctions among children was upheld by this Court in the *Marine I* decision. *Marine I*, 607 A.2d at 1209. The State thus contends that our holding in *Marine* is controlling here, as well. It is argued that the amendment merely creates another age-based distinction to ensure that a Delaware court will always have jurisdiction over a

felony offender. While this Court did uphold the constitutionality of the statutory scheme in *Marine I*, we explicitly based our holding on the ground that the amenability process provides the requisite constitutional safeguard for those children charged with a crime before the Superior Court.

> We rejected Marine's claim that the Delaware legislative framework denied Marine equal protection and due process, in large part because of the Legislature's adoption in 1971 of a reverse amenability statute, the forerunner of section [1011]. *See Marine I* at 1209.

*Marine II*, 624 A.2d at 1186 n. 11. Here, the amendment abrogates the constitutionally-required continuing existence of a judicial check on prosecutorial authority.

Prior to the amendment, the decision whether the Family Court or the Superior Court obtained jurisdiction over a child was premised upon specific factors subject to review by an independent judicial body in an amenability hearing or reverse amenability hearing. §§ 1010, 1011. The presumptive classification of children within the jurisdiction of the Family Court under section 1010 withstands constitutional scrutiny largely because an amenability hearing ensures an impartial judicial determination, which is informed by specific criteria, of whether a child is suitable to the rehabilitative processes available in Family Court. In *State v. J.K.*, we stated:

> In our judgment, a distinction drawn by the Family Court Judge in the decisional process, after having properly applied the[ ] extensive criteria, cannot be said to be arbitrary or irrational. Only after it clearly appears to the Court that a reasonable difference exists between two juveniles so as to classify one as amenable and one as non-amenable, may the Court bind each of them over to different treatment.

383 A.2d at 289. We thus found "the classifications drawn by the amenability process to be reasonable, and [to] rest upon a basis of difference bearing a fair and substantial relation to legitimate goals." *Id.*

■■■ Similarly, the reverse amenability process under section 1011 protects children

by assuring that they are adjudicated in the correct forum. The procedure "is of constitutional dimension." *Marine II,* 624 A.2d at 1184. Of critical importance, a reverse amenability hearing "provide[s] a judicial counterweight to any perceived prosecutorial charging excess." *Marine I,* 607 A.2d at 1209. This proceeding vests with the Superior Court the power to examine independently the evidentiary basis for the crime charged by which it considers whether the State can establish a *prima facie* case for the charge which subjected the child to the Superior Court. *Id.* at 1211. Thus, the reverse amenability process provides a constitutional minimum which "eliminates the potential for arbitrary or capricious charging decisions to result in unequal treatment." *Id.* at 1209.

Notwithstanding the pivotal constitutional safeguards inherent in the amenability and reverse amenability processes, the statutory amendment attempts to consign those children *charged* with felonies to the Superior Court, upon reaching age eighteen before adjudication in the Family Court, without independent judicial scrutiny into the basis of the alleged offenses. Under the new legislative scheme, neither the Family Court nor the Superior Court has the authority to review the charge against the child to weigh its evidential foundation and validity. Moreover, the courts have been divested of their discretion to transfer a case to another forum "in the interests of justice." Thus, every child *charged* with a felony who reaches age eighteen pending trial is subject to prosecution as an adult without regard to the factual basis which underlies the alleged offense.

[redacted] Under this scenario, the fate of a child is entirely entrusted—without impartial judicial review—to the charging authority, which unilaterally decides whether to charge a child with a felony or misdemeanor, without a mechanism to challenge its charging decision or transfer the case to the appropriate forum. In essence, the statutory amendment has stripped the judiciary of its independent jurisdictional role in the adjudication of children by granting the charging authority the unbridled discretion to unilaterally determine which forum has jurisdiction over every child who will reach eighteen years of age before being adjudicated in Family Court. In theory, under the statutory amendment, the State could attempt to try all seventeen year olds as adults by including a felony charge in every case and delaying trial until the child reaches age eighteen. By abrogating the amenability processes, the statute has deprived children, such as Hughes, the judicial counterweight which they are constitutionally entitled to receive.

The State responds that it has very broad discretion in determining whether or not to prosecute and what charge(s) to file against a defendant. We recognized the broad discretion of the charging authority in *Marine I:*

> The law is well settled that a legislative scheme vesting broad authority in the state or federal government through the charging process to determine whether a child shall be prosecuted as a juvenile or as an adult is not a denial of due process in the absence of 'suspect' factors [race or religion] or other arbitrary classifications.

*Marine I,* 607 A.2d at 1208. Similarly, we noted in *Albury v. State,* Del.Supr., 551 A.2d 53 (1988), that:

> . . . the State has broad discretion as to whom to prosecute. '[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision of whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'

*Id.* at 61 (quoting *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985)) (citations omitted). The State notes that this Court has "recognized a rebuttable presumption that criminal prosecutions are undertaken in good faith and in a nondiscriminatory manner." *See id.* at 62. The State insists that it acted in good faith and did not selectively charge Hughes based upon a suspect or arbitrary classification. Rather, the fortuity of Hughes' date of birth, date of arrest, and charge indiscriminately determined the appropriate forum for his trial. The State contends that Hughes should bear the risk of this fortuitous combination so long as the State acted in good faith and did not discriminate by bringing charges against him.

Despite the very broad discretion the State maintains in its decision to charge and prosecute child offenders, nonetheless, when children are prosecuted as adults, "a judicial examination of the evidentiary justification for the charging decision is required." *Marine I*, 607 A.2d at 1212. Independent judicial review to assess the basis for prosecuting a child as an adult is "a prerequisite for sustaining the constitutionality of the Delaware statutory framework." *Marine II*, 624 A.2d at 1186. The good faith of the charging authority in its decision to charge a child with a felony is not sufficient to protect a child's constitutional rights. *See, e.g., Hammond v. State*, Del.Supr., 569 A.2d 81, 87 (1989); *Bailey v. State*, Del.Supr., 521 A.2d 1069, 1091 (1987); *Deberry v. State*, Del. Supr., 457 A.2d 744, 752–53 (1983) (as matter of State Constitutional law, failure to preserve potentially exculpatory evidence requires the court to perform a tripartite analysis for due process violation in which the conduct (good faith) of the State's agents is a relevant but not determinative consideration); *compare Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) (as matter of Federal Constitutional law, failure to preserve potentially useful evidence does not constitute due process violation unless defendant can show bad faith).

The State's decision to charge a child with a felony implicates constitutional rights not present in the average charging decision of an adult. The consequences of over-charging an adult are limited. While an unfounded felony charge may implicate an adult's liberty interest and provide the State greater bargaining position in any plea negotiations with the adult, a trial buffers any prejudice suffered by the adult by compelling the State to prove the elements of the alleged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). An adult acquitted of an alleged felony offense but convicted of a lesser included misdemeanor offense will be subject to the same penalties as if originally charged with the lesser offense. Thus, our judicial review of the charging decision is limited because the prosecution is accorded broad discretion when charging adults already in the adult system. *Albury*, 551 A.2d at 61.

Conversely, judicial review of the charging decision is essential for those children who are prosecuted as adults. While over-charging an adult is of little consequence, a groundless felony charge against a child who reaches age eighteen pending trial in the Family Court results in a criminal prosecution with its grave attendant consequences. The child is subjected to a public trial in the Superior Court and, if found guilty, convicted of a *crime* with the attendant stigma of possessing a criminal record. Therefore, an unfounded felony charge may arbitrarily deprive a child of the many advantages of adjudication in the Family Court in which, regarding a misdemeanor: the child is afforded treatment in his own interest, 10 *Del.C.* § 902(a); the child is assured privacy, 10 *Del.C.* § 1063; the child may have certain delinquency adjudications expunged and arrest records destroyed, 10 *Del.C.* § 1001; and, most importantly, the child is never designated a *criminal*. 10 *Del.C.* § 1010. In view of these consequences, it is unconstitutional to grant unfettered discretion to the prosecution, whose unilateral charging decision can effectively establish the jurisdiction over a child. Some meaningful judicial review into the nature of the charge is essential to the constitutionality of such a scheme.

The State argues that the elimination of the reverse amenability process is not constitutionally offensive because adults have never been afforded an amenability procedure under this State's statutory scheme. Under the language of section 1011, only a child (person under the age of eighteen) can be subject to a reverse amenability hearing. Because the statutory amendment only applies to those who have reached *adulthood* prior to trial, the State argues that such children lost the benefit of reverse amenability upon reaching their eighteenth birthday. It is argued that these children—turned adults—cannot be deprived of that to which they are no longer entitled. The State claims that the amendment simply reiterates the basic principle that the Family Court loses jurisdiction over a child who reaches

the age of eighteen. We find this argument disingenuous.

■ Every child who is under the age of eighteen when arrested for a crime is initially subject to the jurisdiction of the Family Court unless charged with a designated felony or found nonamenable by the Family Court. The reverse amenability process ensures that those children charged with a designated felony receive an independent evaluation into the merits of the alleged offense. In either case, the child is afforded a *judicial* determination of whether the Superior Court should assume jurisdiction over the child. It is of no consequence that adults are not entitled to an amenability or reverse amenability hearing. As a threshold matter, there must be some mechanism in which a child may seek a disinterested examination into the basis of the felony charge to be prosecuted as an adult.

■ It is now well established in Delaware that the defendant's age at the time of his *arrest* for a given offense is determinative of whether the Family Court or the Superior Court has jurisdiction over the offense. *Marine II*, 624 A.2d at 1190; *Connors*, 505 A.2d at 1303; *Howard v. State*, Del.Supr., No. 385, 1991, Walsh, J., 612 A.2d 158 (1992) (Order). Thus, it is the date of arrest and the seriousness of the crime charged which determines jurisdiction. *Marine II*, 624 A.2d at 1191; 10 *Del.C.* §§ 921, 1002, 1011. The reverse amenability process guarantees that jurisdiction in Superior Court is premised upon the nature of the *offense* rather than the nature of the *charge*.

The amendment alters this process by fashioning jurisdiction over certain children based upon the date of *adjudication* and the crime *alleged.* Under this scheme, a child arrested and charged with a nondesignated felony while under eighteen years of age is subject to the scheduling variables of the Family Court. As a consequence, children charged with felonies are literally at the "mercy of the call of the calendar" of the Family Court. We are informed that currently, the routine trial tract for a case with-

in the Family Court may extend from one year from arrest date until trial date. Moreover, due to the inevitable complications inherent in an overburdened Family Court, even the most efficient caseload management is subject to prolonged adjudicative delays. Hence, jurisdiction over children becomes contingent upon the efficiency of the judicial system rather than the seriousness of the crime and the age and character of the child. Premising jurisdiction over children upon the date their cases are adjudicated imposes an arbitrary deadline on a child's constitutional rights and compounds the risk of arbitrariness in the charging process. Such risks cannot withstand equal protection scrutiny.

Arbitrary treatment under the amendment is not difficult to envision. For example, two juveniles are arrested for delinquency arising from the joint theft of property. The value of the property is questionable, but the police or the prosecution decide to treat the property as subject to the felony level had the defendants been adults.[7] One juvenile is 17 years and 10 months of age while the other has just turned 17. Both are referred to Family Court for trial. Since it clearly appears that, under normal Family Court scheduling, the older juvenile will "age out" while awaiting trial, his case will be automatically transferred to the Superior Court after two months. The other offender will likely be able to remain in the Family Court for processing and not run the risk of being convicted of a crime. The older offender, even if innocent, may be tempted to seek an expedited court date in order to plead guilty to a charge of "delinquency" in the Family Court. Under this scenario, there is no rational basis for distinguishing between the defendants in terms of their conduct, and both are arrested as "children." Nonetheless, under the recent amendment differing adjudicative results will surely occur. A law which produces such results plainly violates the right of equal protection. *See State v. Owens*, 103 N.M. 121, 703 P.2d 898, 901 (1984) ("[S]tatutes which permit the state to subject one person to the possibility of greater punishment than another who has commit-

---

7. Under Delaware law, theft is a misdemeanor if the value of the property in question is less than $500, otherwise the offense is deemed a felony. 11 *Del.C.* § 841.

ted an identical act violate the equal protection clauses of the state and federal constitutions.").

The amendment deprives children of the constitutional safeguard of judicial review into the charging decision which was mandated by this Court in the *Marine* decisions. Without an independent examination into the evidentiary basis of a felony charge, the prosecution has the unfettered authority, through its charging decision, to unilaterally determine the jurisdiction over a substantial number of seventeen year old defendants in the Family Court. In effect, Hughes, and other defendants approaching their eighteenth birthday, will be penalized under the statute, via an adult prosecution in Superior Court, upon the nature of the allegation rather than the nature of the offense. Thus, the statute is facially unconstitutional as a violation of the right to due process under the United States and Delaware Constitutions. U.S. Const. amend. 14; Del. Const. art. I, § 7. *See also People v. Drummond*, Ct.App., 40 N.Y.2d 990, 391 N.Y.S.2d 67, 359 N.E.2d 663 (1976), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977); *In the Interest of D.D.*, Fla.App., 564 So.2d 1224, 1225 (1990). Further, under the statute, children unfairly *charged* with committing a felony but convicted of a misdemeanor are accorded disparate treatment from those children charged with a misdemeanor. The former are treated as criminals on the basis of an unproven accusation while the latter are treated as delinquents and receive proceedings in their best interest. Therefore, the distinction is patently arbitrary and bears no rational relationship to a legitimate government interest. *Gotleib*, 406 A.2d at 275; *see also State v. Johnson*, La.Supr., 343 So.2d 705, 708 (1977). Accordingly, we conclude that the statutory elimination of a judicial investigation into the factual basis of a felony charge against a child violates the constitutional guarantees of due process and equal protection of the law. *Marine II*, 624 A.2d at 1184, 1186 n. 11.[8]

We note that there never existed the perceived jurisdictional gap between the Family Court and Superior Court over those children who reach age eighteen before adjudication in the Family Court. The *Marine* decisions did not establish that children who reach age eighteen pending trial in Family Court become liberated from the jurisdiction of the Delaware judicial system. Rather, the result in *Marine* simply originated from a flawed amenability process in which Marine should have never been before the Superior Court. Marine was incarcerated throughout his trial and the appellate process and had, by then, served the maximum time period allowed under the then-existing Family Court laws so that a retrial in that court was futile. Marine was released from custody not because of a jurisdictional gap or loophole but, rather, his release was founded upon the traditional margins of jurisdiction between the Superior Court and Family Court.

Under the *Marine* decisions, a child who reaches age eighteen pending trial can be tried in either the Family Court or Superior Court depending upon a number of factors. For most offenses, the Family Court may elect to retain jurisdiction over the child or transfer jurisdiction to the Superior Court if it concludes that the child is not amenable to its processes. Those children charged with a designated felony are tried in the Superior Court unless the alleged felony lacks a factual predicate or a transfer to Family Court is "in the interests of justice."

Moreover, the General Assembly has recently granted the Family Court potential jurisdiction over children until they reach the age of twenty-one. Subsequent to the *Marine* decisions, the General Assembly enacted 10 *Del.C.* § 928, which permits the Attorney General, prior to a child's trial in Family Court, to petition the court to extend its jurisdiction over the child. 69 *Del.Laws*, c. 96. Consequently, if the child is adjudged delinquent by the Family Court, the court may decide, after considering the child's age and the seriousness of the offense, as well as

---

**8.** Although we have concluded that the statutory amendment is violative of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, we emphasize that our holding could be sustained exclusively under the due process provision of the Delaware Constitution. Del. Const. art. I, § 7.

the need for rehabilitation and the public's safety, to extend jurisdiction over the child until age twenty-one or until the child is discharged from jurisdiction by the court. § 928(c). Therefore, children do not "age-out" of the Family Court upon their eighteenth birthday. Any perceived "jurisdictional gap" had been closed previously by the General Assembly.

Finally, we note that the basic thrust of the statutory amendment would be constitutionally acceptable, if the reverse amenability process under 10 *Del.C.* § 1011(b) were retained. Since the State has argued that the provisions of the amendment are not severable, we have not attempted to preserve the constitutionality of the statutory amendment by invalidating only the last sentence of the amendment which precludes application of § 1011.

## IV

We conclude that the statutory amendment under review violates the constitutional guarantees of due process and equal protection of the laws. The amendment divests the judiciary of its independent role in assessing the evidentiary basis of a charge against a child. Such a judicial check on the charging authority is mandatory to comply with the principles enunciated in the *Marine* decisions. The distinctions drawn by the amendment are patently arbitrary and bear no rational relationship to a legitimate government interest.

The policy reasons which prompt the enactment of legislation are solely the concern of the General Assembly and it is not the function of the judiciary to question the wisdom underlying the passage of a statute. *Ames v. Wilmington Housing Authority*, Del.Supr., 233 A.2d 453, 456 (1967). Our role is limited to a review for constitutionality, *i.e.*, does a particular statute contravene the rights or impair the guarantees which the Federal and Delaware Constitutions have established as bedrock principles limiting governmental power? *Opinion of the Justices*, Del.Supr., 385 A.2d 695 (1978). Where such departures are found to exist, it is the right, indeed the duty, of the judiciary to require conformity with the constitutional standards.

Our action invalidating the statutory amendment is intended to ensure that the prosecution of minors is conducted in accordance with standards of equality and due process. One of the oldest and most cherished principles of constitutional due process in our nation is that when a person is arrested (charged), that person is presumed to be innocent until convicted by evidence beyond a reasonable doubt. *Goddard v. State*, Del. Supr., 382 A.2d 238, 240 (1977). That very same principle requires punishment to be based upon the crime for which a person is convicted and not the crime for which he or she was arrested or charged.

Certified questions numbers four and five are answered in the AFFIRMATIVE.

## ORDER

This 30th day of January, 1995 it appears that:

(1) The State has moved for reargument asserting various grounds which we find to be without merit. To the extent the State's motion is intended to seek clarification for further guidance we note the following:

(a) Because of its accusatory, *ex parte* function, a grand jury does not serve as an independent check on prosecutorial authority and is not viewed as a protector of a defendant's rights. *See United States v. Williams*, 504 U.S. 36, —— ——, 112 S.Ct. 1735, 1744–45, 118 L.Ed.2d 352 (1992).

(b) The certified questions in the case requested this court to pass upon the constitutionality of 10 *Del.C.* § 1002, not 11 *Del.C.* § 1447. This Court will "decide only the case before us." *Paramount Communications, Inc. v. QVC Network*, Del.Supr., 637 A.2d 34, 51 (1991). Nor was the constitutionality of 11 *Del.C.* § 1447 before the Court in *Cain v. State*, Del. Supr., 639 A.2d 74 (1994) (ORDER), since the defendant in *Cain* did not seek a reverse amenability hearing under then-existing 10 *Del.C.* § 939 as to the section 1447 offense.

**254**

(c) In view of the State's explicit rejection at oral argument of a severability analysis as contrary to legislative intent, the State will not be permitted to advance a post-decision contention to the contrary.

(d) As the decision of the Court makes clear, those children presently awaiting trial who are affected by 10 *Del.C.* § 1002 may be tried in either the Superior Court or the Family Court subject to the amenability process under 10 *Del.C.* § 1010(a)(2), and the Family Court may elect to retain jurisdiction over such persons under the recent amendment to 10 *Del.C.* § 928.

NOW, THEREFORE, IT IS ORDERED that the motion for reargument be, and the same hereby is,

DENIED.