# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

Ms. Jenna Milecki, DAG
Department of Justice
820 N. French Street
Wilmington, DE 19801

Ms. Caitlin Gregory, Esquire
Mr. Jospeh Halsey, Esquire
Office of Defense Services
45 The Green
Dover, DE 19901

Ms. Stephanie Lugaro-Gordon, DAG
Department of Justice
114 N. Water Street
Dover, DE 19901

**RE*:  State v. Tykwan James,*  I.D. No. 2405003494**

Submitted:  April 16, 2025
Decided:    April 29, 2025

Dear Counsel:

Defendant Tykwan James allegedly shot and killed Randy Bolden on May 8, 2024.  The State has charged Mr. James with Murder in the First Degree (hereinafter "Murder First"), Possession of a Firearm During the Commission of a Felony (hereinafter "PFDCF"), and Possession of a Firearm by a Person Prohibited (hereinafter "PFBPP").  These charges pend in Superior Court.  At the time of the alleged offense, Mr. James was seventeen years old.  He is now eighteen and will turn nineteen later this year, on December 19, 2025.

Presently, Mr. James moves to transfer his charges to Family Court under 10 *Del. C.* § 1011.  The Court held a reverse amenability hearing on April 16, 2025.  Of

the three pending charges, one—PFDCF—must remain in the Superior Court if the State can produce sufficient evidence to demonstrate a prima facie case that he possessed a firearm and used it to further a violent felony.[1] Apart from reviewing the prospective trial evidence for purposes of the PFDCF charge, the Court must examine the statutory factors in 10 *Del. C.* § 1011(b) (hereinafter, the "statutory factors" or "Section 1011(b) factors") to determine if the Murder First and PFBPP charges must be transferred to Family Court. Accordingly, in total, the Court must consider both (1) the substance of the State's evidence regarding the PFDCF charge, and (2) whether an application of the statutory factors separately require transfer of the Murder First and PFBPP charges.

For the reasons discussed below, the State demonstrated a fair probability that a jury will find beyond a reasonable doubt that Mr. James used, displayed, or discharged a firearm while committing Murder First. As a result, the PFDCF charge must remain in this Court. As to the second inquiry, Mr. James has not met his burden under the statutory factors. As a result, all three charges will remain in Superior Court.

## STANDARDS

The first inquiry triggered by Mr. James' motion turns on the Superior Court's exclusive jurisdiction over the PFDCF charge.[2] The State bears the burden on this issue. The PFDCF charge, placed in context with the other offenses that Mr. James is alleged to have committed, must remain in this Court, if

> following an evidentiary hearing . . . the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of [Murder First].[3]

---

[1] 11 *Del. C.* § 1447A(d).
[2] *Id.*
[3] *Id.*

2

In other words, the State meets its evidentiary burden if it can demonstrate that there is a fair likelihood that Mr. James used a firearm to commit Murder First.[4] For that reason, the State's proof must address both his use of the firearm and the intentional murder.

The second inquiry triggered by Mr. James' motion requires the Court to apply the factors found in Section 1011(b).[5] That subsection itemizes the following three factors that are relevant to the potential transfer of the Murder First and PFBPP charges. They are:

    (1)  the nature of the present offense and the extent and nature of the defendant's prior record;
    (2)  the nature of past treatment and defendant's response; and
    (3)  the interests of society and the defendant.

Section 1011(b) also permits the Court to consider other relevant circumstances when deciding whether the interests of justice are best served by transferring the charges.[6] In a general sense, the Court uses a combination of these factors to determine jurisdiction based upon the nature of the offenses charged and the child's character.[7]

---

[4] *State v. Brown*, 2019 WL 994575, at *3 (Del. Super. Feb. 28, 2019) ("[t]here is a fair likelihood that the defendant will be convicted if, after reviewing the totality of the evidence presented, it appears that, if the defense does not sufficiently rebut the State's evidence, the likelihood of a conviction is real" (quotation omitted)).

[5] Notably, a reasonable question remains unanswered regarding whether the Court should entertain the second inquiry in this case because the PFDCF charge is inextricably linked to the Murder First charge. In *State v. Anderson*, the Delaware Supreme Court answered a certified question in the context of non-descript cases. 697 A.2d 379 (Del. 1997). There, it held that in at least some circumstances, other charges brought with a PFDCF charge should undergo the second inquiry. *Id*. at 384. Post-*Anderson*, Superior Court authority has uniformly applied the statutory factors to felony charges that accompany a PFDCF charge. *See e.g.*, *State v. Wilson*, 2023 WL 5406160, at *2 (Del. Super. Aug. 21, 2023); *State v. Rollins*, 2021 WL 5987795, at *2 (Del. Super. Dec. 17, 2021); *State v. Caudle*, 2018 WL 4253210, at *3 (Del. Super. Sept. 5, 2018). Given such uniformity in persuasive authority, this Court likewise applies the statutory factors to the Murder First and PFBPP charges in Mr. James' case.

[6] *Hughes v. State*, 653 A.2d 241, 245 (Del. 1994), *as clarified* (Jan. 30, 1995).

[7] *Id*. (citing *State v. Anderson*, 385 A.2d 738, 741 (Del. Super. 1978)).

## SUFFICIENCY OF THE EVIDENCE REGARDING PFDCF

The State presented the testimony of the chief investigating officer, Detective Boney, at the hearing. It also presented the body camera videos of two officers who arrived at the scene shortly after the shooting,[8] and several photographs of the murder scene.[9] In response, Mr. James presented no witnesses or evidence relevant to the events surrounding the alleged offenses.

Here, the testimony, out of court statements relayed through the chief investigating officer, and circumstantial evidence supports only one reasonable conclusion—there is a fair probability that Mr. James shot and killed Mr. Bolden as he walked or ran away from Mr. James after an argument. More specifically, the evidence included video footage of Mr. Bolden lying at the foot of a stairway in Mr. James' home. There, he suffered from obvious gunshot wounds. The videos and photographs combined revealed blood splattering running down the wall, adjacent to the stairs along the handrail. Expended cartridge casings were positioned at the top of the stairs. Bullet fragments were imbedded toward the bottom of the staircase as well. Ms. James' mother, who was also Mr. Bolden's girlfriend, appeared distraught over the shooting in the body cam videos. Furthermore, Detective Boney testified that Mr. James' mother identified him as the shooter and told the police that Mr. James fled the scene immediately afterward. Based on this unrebutted evidence, the State met its burden on the first inquiry.

## APPLICATION OF THE SECTION 1011(b) FACTORS

Of the three express Section 1011(b) factors, one weighs neutrally, one favors transfer, and one strongly disfavors transfer. Combined, they alone make transfer inappropriate. In addition, the inextricably intertwined nature of the PFDCF, Murder First, and PFBPP charges separately militate against a transfer to Family Court.

---

[8] State's Ex. 1, 2.
[9] State's Ex. 3–13.

As to the express statutory factors, the first factor requires the Court to examine the nature of the offenses charged and the defendant's prior record. This factor supports transfer in part, and does not support it, in part. On one hand, the lead charge, Murder First, is a Class A violent felony, and is the most serious offense in Delaware's Criminal Code.[10] In this case, the violence involved with allegedly shooting another person multiple times, as the person either walked or ran away from a dispute, tilts this factor heavily toward disposition in the Superior Court. On the other hand, the evidence presented at the hearing demonstrated that Mr. James had no prior adult or juvenile criminal record which militates significantly for transfer. On balance, this factor, if examined in a vacuum, would weigh neutrally.

The second express factor weighs in favor of transfer to some degree. Namely, Dr. Belcher-Timme, who testified as an expert psychologist for Mr. James, opined that Mr. James' treatment as a juvenile was minimal and that he responded positively to the limited treatment provided him. Furthermore, Mr. Pribulick, the State's expert witness, did not counter that opinion.[11] That, in turn, leaves Dr. Belcher-Timme's opinions regarding the likely effectiveness of treatment unrebutted. On the other hand, some evidence militated against transfer under this factor. Namely, testimony established that Mr. James has had several disciplinary incidents at Stevenson House Detention Center (hereinafter, "Stevenson") during the eleven-months he has been detained, to date.[12] Those incidents, at least for a time, resulted in loss of privileges and his assignment to higher security levels at Stevenson. In totality, however, this factor favors transfer.

The third factor, which focuses on society and the defendant's best interests, weighs heavily against transfer and deserves controlling weight under the totality of

---

[10] 11 *Del. C.* § 636.

[11] Mr. Pribulick's testimony, report, and opinions focused on the third factor and how Mr. James' age and inability of YRS to effectively supervise him makes transfer inappropriate.

[12] State's Ex. 14, at 2 (DSCYF Reverse Amenability Report).

the circumstances. At the outset, the interests of society in this case would be ill served by transferring the most serious charge, Murder First, or the accompanying PFBPP charge to Family Court. Mr. James was seventeen years old when he allegedly committed the murder with a firearm. He is now eighteen and, if there were to be a transfer to Family Court, he would be subject to detention at Stevenson only until his nineteenth birthday. As a result, any significant inpatient treatment that the Division of Youth Rehabilitative Services ("YRS") could provide him would have to conclude before his nineteenth birthday, approximately eight months from now. After that point, YRS could not detain him. Even the use of the remaining eight months for intensive inpatient treatment would be highly unlikely. To that end, if the Court were to transfer the Murder First and PFBPP charges to Family Court, resolving them in Family Court before the passage of eight months would be improbable.

Moreover, society deserves a heightened degree of accountability regarding an alleged intentional murder that involves the use of a firearm. If Mr. James were ultimately found delinquent for Murder First, interests of public safety would have already been compromised upon transfer. Namely, YRS could not attach consequences to Mr. James' community-based supervision after his nineteenth birthday. In other words, while YRS could supervise him and require limited community treatment until his twenty-first birthday, it could impose no meaningful consequences if he were to refuse to comply.

Mr. James aptly argued at the hearing that a potential conviction of the PFDCF charge in Superior Court could mitigate these community safety concerns. His argument is reasonable but does not change the result for two reasons.

First, bifurcated jurisdiction would completely deflate the weight of the potential benefit of treatment under the second Section 1011(b) factor. To this end, while Mr. James awaits trial on the PFDCF charge in Superior Court, YRS would

likely deem him ineligible for treatment during the eight months of remaining juvenile custody.[13] Granted, were he to be convicted of PFDCF as an adult, he would face minimum mandatory incarceration and would likely face a period of adult probation. While that would provide for some additional sanctionable community supervision, he would still forfeit nearly all available treatment in the juvenile system. In other words, the main argument for transfer—the potential to rehabilitate Mr. James under the juvenile system—would be lost without benefit if the Murder First and PFBPP charges were transferred.

Second, while Mr. James has not yet been adjudicated of anything, the disparity in the gravity between PFDCF and Murder First is significant. Here, as in the nature of the offense part of the analysis required in the first statutory factor, the circumstances surrounding the alleged intentional murder become important. The evidence presented at the proof positive hearing demonstrated an extremely violent crime where the perpetrator shot a victim multiple times as that victim tried to escape the confrontation. Societal concerns and public safety militate strongly for the resolution of this charge in the Superior Court.

The third itemized factor also requires the Court to consider Mr. James' interest in this case and the Court has done so. In this case, his interests are not as one-sided as it would seem at first blush. Granted, a defendant who faces serious criminal charges certainly enjoys a benefit when resolving them as a delinquency because of the difference in potential penalties. Nevertheless, when viewing Mr. James' interests through the lens of available juvenile rehabilitative treatment, his age, and YRS' inability to meaningfully supervise him for more than eight months, he would gain no meaningful juvenile treatment benefit. To that end, YRS could do

---

[13] *See State v. Bailey*, 2017 WL 838223, at *8 (Del. Super. March 10, 2017) (recognizing in the context of a PFDCF charge that "this Court reluctantly must accept that a transfer to Family Court [of the companion charges] would do nothing but delay Defendant's access to services while he remains detained awaiting disposition of his adult charges. The only efficient choice is to keep the charges together so that Defendant is working solely with one Court").

little, upon transfer, to help him become a successful, law-abiding member of society through juvenile treatment.

On balance, when considering the best interests of society and Mr. James' best interests, the third factor weighs overwhelmingly against transfer. Mr. James' age, the seriousness of the charges, interests of public safety, and YRS' inability to effectively supervise him after his nineteenth birthday strongly support Superior Court's retention of jurisdiction of the Murder First and PFBPP charges.

Finally, Section 1011 includes what some decisions have described as a catchall factor. Namely, the statute permits the Court to consider "such other factors which, in the judgment of the Court are deemed relevant."[14] Were the Court to retain jurisdiction over the PFDCF charge and transfer the Murder First and PFBPP charges to Family Court, there would be a significant risk of inconsistent or conflicting results. To this end, a Superior Court jury would need to consider whether Mr. James committed Murder First as an element of PFDCF. Contemporaneously, the Family Court would need to consider whether Mr. James was delinquent of Murder First. Such bifurcation could create potential double jeopardy concerns and violate the principle of issue preclusion.[15] Bifurcating the charges would also leave other unanswered questions depending upon the respective results in each court. Stated more precisely, how would the courts reconcile an acquittal or finding of juvenile delinquency of Murder First in Family Court with a possible PFDCF acquittal or conviction in Superior Court?

---

[14] 10 *Del. C.* § 1011(b).

[15] *See Priest v. State*, 879 A.2d 575, 583 (Del. 2005) (recognizing that inconsistent verdicts involving an acquittal of a PFDCF predicate offense and a conviction of PFDCF cannot stand); *see also Graham v. State*, 171 A.3d 573 (TABLE), 2017 WL 4128495, at *3 (Del. Sept. 18, 2017) (finding this prohibition to be required by the Double Jeopardy Clause of the Federal Constitution); *State v. Wilkerson*, 2021 WL 4075018, at *2 (Del. Super. Sept. 7, 2021) (recognizing U.S. Supreme Court authority that couches the prohibition in terms of collateral estoppel).

Despite these complications, Superior Court decisions have uniformly applied the statutory factors to the charges that accompany PFDCF charges. Regardless, the decision to try *inextricably intertwined* charges in different courts would inescapably create complications and tax judicial economy. As a result, the intertwined nature of the charges in this case significantly weighs against transfer.

In summary, Section 1011(b)'s factors, both itemized and not, weigh in favor of denying Mr. James' motion to transfer the Murder First and PFBPP charges to Family Court. All three pending charges will be answered in this Court.

## CONCLUSION

For the reasons above, the State demonstrated a fair likelihood that Mr. James will be convicted of PFDCF and be found to have committed an accompanying violent felony, here Murder First, as an element of that offense. Furthermore, an independent application of the Section 1011(b) factors makes the transfer of Mr. James' other charges to Family Court inappropriate. Accordingly, his motion to transfer is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Very truly yours,

/s/ Jeffrey J Clark
Resident Judge