# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,           )
                             )
                             )
    v.                       )        I.D. No.:    1704013610
                             )
                             )
KYAIR KEYS,                  )
                             )
        Defendant.           )

## MEMORANDUM OPINION

Submitted: December 18, 2017
Decided: March 1, 2018

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**GRANTED.**

Phillip M. Casale, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

Monica G. Germono, Esquire, Assistant Public Defender, Office of Defense Services, Wilmington, Delaware. *Attorney for the Defendant.*

**MEDINILLA, J.**

## INTRODUCTION

Kyair Keys ("Defendant") is not competent to stand trial. He entered the adult criminal justice system at age thirteen when the State made its charging decision to bring his charges here.[1] He is charged in this Court with one count of Assault First Degree, three counts of Possession of a Firearm During Commission of a Felony, Possession of a Firearm by Prohibited Juvenile, and two counts of Reckless Endangering First Degree.[2] All charges may be considered for transfer to Family Court under 10 *Del. C.* § 1011 and, upon Defendant's Motion to Transfer, a reverse amenability hearing was held on December 18, 2017. The State also argues that the reverse amenability hearing should not proceed because Defendant's competency status prevents him from being able to meaningfully participate in the proceedings. After consideration of the parties' submissions, oral arguments, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

Defendant has been in the juvenile justice system since age eleven and currently has fifteen other unrelated matters that remain pending in the Family

---

[1] Defendant's date of birth is October 6, 2003. Motion at ¶ 1.

[2] Indictment (dated Aug. 7, 2017).

2

Court.[3] In addition to various misdemeanor offenses, his alleged behavior escalated to felony offenses including charges of Aggravated Menacing and Possession of a Deadly Weapon During the Commission of a Felony before he was arrested for these shooting offenses.

On these charges, the Court need not make a preliminary determination of whether the State has made out a *prima facie* case against the Defendant because both sides have stipulated, for purposes of reverse amenability only, that there is a fair likelihood of Defendant's conviction if he proceeded to trial. At age thirteen, Defendant allegedly pulled a pistol from his waistband and fired approximately five to seven shots at three individuals following arguments between two groups of young men. One of the victims was a fifteen-year-old, who required surgery to his shoulder and suffered injuries to his back and chest as a result of the shooting.

Defendant was originally charged with these offenses in Family Court in April 2017. In July of 2017, Drs. Robin Belcher-Timme, Psy.D., MACJ, and Amy Diehl Iannetta, Psy.D., both licensed psychologists, opined respectively on behalf of Defendant and the State that Defendant was not competent to stand trial.[4] His record

---

[3] The misdemeanor charges in Family Court include but are not limited to Offensive Touching, Disorderly Conduct, and two Counts of Terroristic Threatening. Defendant was placed in the Detention Center on April 1, 2015 for charges of Conspiracy third, two counts of Terroristic Threatening, three Counts of Harassment, Menacing and Disorderly Conduct by Fighting.

[4] Report of Robin Belcher-Timme, Psy.D. MACJ (dated July 11, 2017); Report of Amy Diehl-Iannetta, Psy.D. (dated July 28, 2017).

is replete with documentation that reflects an inability to control his frustration and anger that often results in fights with parents, peers, and others, and has required commitments to Rockford due to uncontrollable behavior.[5] His various diagnoses include, but are not limited to Mood Disorder, Oppositional Defiant Disorder, Attention Deficit Hyperactivity Disorder, Conduct Disorder, Cannabis Abuse, and Opioid Abuse.[6] Defendant's diagnoses have led both sides to agree that, under 10 *Del. C.* § 1007A, he is not competent to stand trial. As such, none of his charges have been adjudicated and remain pending on a "Competency Calendar" in Family Court.

The State argues that the Family Court's inability to address Defendant's competency has effectively paralyzed the adjudication of his pending cases and hampered all potential treatment efforts to address his various diagnoses. The State further maintains that at this rate, if Defendant is sent back to Family Court, "he

---

[5] Defendant has been admitted twice to Rockford. He was taken to Terry Children's Center in November 2014 and then transferred for admission to Rockford Inpatient Hospital with Oppositional Defiant Disorder ("ODD"). Defendant was admitted to Rockford from November 12, 2014 through November 18, 2014 and was diagnosed with Mood Disorder (Not Otherwise Specified or "NOS"), Attention Deficit Hyperactivity Disorder ("ADHD"), and ODD. He was seen for follow-up with Rockford Day Treatment. Defendant was then re-admitted to Rockford from March 20, 2015 through March 25, 2015. Defendant had the same diagnoses at that time: Mood Disorder (NOS), ADHD, and ODD. Report of Robin Belcher-Timme, Psy.D. MACJ (dated July 11, 2017); Report of Amy Diehl-Iannetta, Psy.D. (dated July 28, 2017); Report of Jennifer Skinner, Master Family Service Specialist, YRS (submitted Dec. 12, 2017).

[6] Report of Robin Belcher-Timme, Psy.D. MACJ (dated July 11, 2017) at 5.

would end up shot or end up shooting someone."[7] Regrettably, this fatalistic prediction is not off the mark. Delaware has a crime rate higher than the national average, with Wilmington possessing a higher crime rate than either Los Angeles or New York City.[8] Children in Wilmington are more at risk of being victims of gun violence than in any other city in the country, a phenomenon labeled by the Centers for Disease Control and Prevention as an epidemic.[9] Unfortunately, here, both defendant and victim(s) are children.

The State also argues that there is no viable prosecution available in Family Court, and should Defendant remain not competent, the statutory language of the Family Court's competency processes under 10 *Del. C.* § 1007A will lead to a mandatory dismissal. Therefore, on August 7, 2017, the State concedes that it made

---

[7] Comment of DAG during oral argument on December 18, 2017.

[8] TABLE 1: CRIME IN THE UNITED STATES, BY VOLUME AND RATE PER 100,000 INHABITANTS, 1997-2016, FBI UNIFORM CRIME REPORTING (2016), https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/topic-pages/offenses-known-browse-by/national-data (the national violent crime rate, defined as the number of violent crimes per 100,000 people, was 386.3 in 2016); TABLE 3: CRIME IN THE UNITED STATES BY STATE, FBI UNIFORM CRIME REPORTING (2016), https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/tables/table-3 (the state violent crime rate, defines as the number of violent crimes per 100,000 people, was 508.8 in 2016); TABLE 6: OFFENSES KNOWN TO LAW ENFORCEMENT BY STATE BY CITY, FBI UNIFORM CRIME REPORTING (2016), https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/tables/table-6/table-6.xls/view (violent crime rates, defined as the number of violent crimes per 100,000 people, are: 719 for Los Angeles, 573.4 for New York City, and 1,780.2 for Wilmington). *See also Bridgeville Rifle & Pistol Club Ltd., et al. v. Small, et al.,* 2017 WL 6048843, at *25 (Del. Dec. 7, 2017) (Strine, C.J., dissenting) (indicating similarly outsized crime rates for crime statistics from 2015).

[9] Brittany Horn et al., *Wilmington: Most Dangerous Place in America for Youth,* News J. (Sept. 8, 2017).

the charging decision to bring the charges to this Court primarily because this Court has a "Superior Court Competency Restoration Program" ("restoration program")[10] that could attempt to restore Defendant's competency, whereas the Family Court does not have such a program.[11] The availability of such a program served as the impetus to charge this juvenile with adult offenses, and in doing so, the State bypassed the Family Court processes that are currently available for children with these types of cognitive and behavioral diagnoses.

The State asks that Defendant be ordered to participate in the restoration program. In response, Defendant argues first that his competency determination has already been made and that participation in the restoration program will serve only to prejudice Defendant's consideration for transfer. Defendant urges the Court to proceed with a determination on reverse amenability and argues that Defendant's competency status could be considered as *one* factor under 10 *Del. C.* § 1011(b), but should not preclude his right to be heard on the issue of transfer.

---

[10] The "Superior Court Competency Restoration Program" was coined by YRS and is operated wholly out of the New Castle County Detention Center and through YRS. It only recently began in 2016 when a trial judge ordered YRS to create what are essentially learning modules about adult proceedings for juveniles facing adult charges in this Court. Approximately, only three or four juveniles have either been in enrolled in or successfully completed the program.

[11] While this may have been true in December of 2017 when this hearing took place, DSCYF has since implemented and/or modified its program to fit a Family Court model.

Alternatively, the State argues that if Defendant is not ordered to participate in this Court's restoration program, and remains not competent, he should be precluded from having a reverse amenability hearing. Before the Court considers the issue of transfer, both sides request that this Court first address how the determination of competency affects Defendant's right to a reverse amenability hearing.

### Re-Determination of Competency is Not Required

A determination under 10 *Del. C.* § 1007A has already been made by the Family Court that the Defendant is not competent to stand trial. The State argues that this Court is mandated to again follow the procedures under 10 *Del. C.* § 1007A and re-determine Defendant's competency. Although this Court does not challenge the charging decision made in this case, it respectfully disagrees with the State for several reasons.

The troubling irony in the State's position is that it wants this Court to determine competency under 10 *Del. C.* § 1007A in order for Defendant to obtain the necessary treatment, yet it changed his trajectory from the Family Court that not only has already made this determination, but was mandated to order these juvenile-appropriate services. Given the competency issues in this case, the Court feels particularly obligated to highlight the precarious situation that has been created as a result of the decision to charge Defendant as an adult. The charging decision has

7

affected Defendant's placement and treatment options, and may have thwarted the Family Court's efforts and the mandatory provisions under 10 *Del. C.* § 1007A.

Section 1007A specifically dictates that the Superior Court will determine competency of juveniles subject to 10 *Del. C.* § 1010(a) or § 1010(c)(3) *"consistent with the rules and procedures of that Court* and any other applicable law."[12] Thus, in this Court, it is 11 *Del. C.* § 404 that governs the placement of individuals deemed not competent to stand trial. The statute reads:

> Whenever the court is satisfied, after hearing, that an accused person because of *mental illness or serious mental disorder*, is unable to understand the nature of the proceedings against the accused, or to give evidence in the accused's own defense or to instruct counsel on the accused's own behalf, the court *may* order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial.[13]

The provisions in this statute are quite generic and permissive as to how this Court treats "accused persons" who are not competent to stand trial.

By contrast, the Family Court's consideration of whether a child is competent is found under 10 *Del. C.* § 1007A, and provides a more specific and mandatory roadmap of considerations and procedures as follows:

> [t]he underlying bases for a finding that a *child* is not competent may include, but are not limited to, significant mental disorder or incapacity, *significant*

---

[12] 10 *Del. C.* § 1007A(b)(1) (emphasis added).

[13] 11 *Del. C.* § 404(a) (emphasis added).

*developmental delay, significant cognitive impairment, and/or chronological immaturity.* A child's age alone may not serve as the basis for a finding that a child is not competent. The finding must be based on the individual child's capacities for competency.[14]

Here, the Family Court employed what appears to be a more holistic approach as to the "child" and his ability to effectively understand and participate in his or her defense, which is not limited to "a mental illness or serious mental disorder."[15] Additionally, §1007A lays out mandatory procedures based upon whether the child's competency can be timely restored or acquired. If such restoration or acquisition can be timely, "the Court *shall* order appropriate treatment or services based on the finding and recommendations contained in the competency evaluation."[16] The Court *shall* then review the child's status at least every six months.[17] Section 1007A contemplates ongoing review by the Court, while § 404 does not.

Here, Defendant remains in detention and has been precluded him from receiving the mandatory attention for treatment and the judicial review intended under § 1007A. Ms. Skinner, Family Court Master Specialist for YRS, testified that treatment or services mandated under § 1007A includes juvenile-specific treatment

---

[14] 10 *Del C.* § 1007A(c)(1) (emphasis added).

[15] 11 *Del. C.* § 404(a).

[16] 10 *Del C.* § 1007A(c)(1).

[17] 10 *Del. C.* § 1007A(c)(2).

programs through outpatient, day, or residential placements. This is ordinarily provided by the mental health division of DSCYF, through Prevention and Behavioral Health ("PBH"). Yet, PBH is currently not offering any services to Defendant—their division has closed their case with him. Ms. Skinner, testified also that YRS treatment has also been minimal and explained that juveniles found not competent are left in a precarious position without access to any services and subject to what administrators have referred to as "the black hole."[18] Not only is PBH wholly absent, so too has YRS been precluded from offering services to Defendant while detained.

The State opposes the proposed placements for treatment ordinarily afforded to children on the "Competency Calendar" due to the seriousness of Defendant's charges, his history of breaches of release, and his mental and behavioral health issues. But the State also acknowledges that the Delaware Psychiatric Center, the placement ordinarily ordered for "accused persons" under § 404, does not accept juveniles. Thus, the State maintains that Defendant should remain at the New Castle County Detention Center as the most appropriate setting. The Court disagrees. Warehousing Defendant with such deficits in a detention facility presents the worst

---

[18] Jennifer Skinner explained further that once any juvenile is deemed not competent, YRS can only offer limited resources related to bail conditions, GPS services, and curfew checks, and must refer the case to PBH.

placement option for him, particularly where Ms. Skinner testified that YRS is providing even less than they would a juvenile without his competency issues.

This Court finds that the State's request that Defendant be ordered to undergo further competency evaluations or enrollment in the restoration program is counter to the spirit of 10 *Del. C.* § 1007A. The Family Court, through both State and Defense experts, determined that Defendant is not competent to stand trial and relied on 10 *Del. C.* § 1007A to provide the statutory mechanism to address children who fall in this category. This Court is not aware of any provision under either 10 *Del. C.* § 1007(A) or 11 *Del. C.* § 404 that mandates separate or multiple competency determinations.

Even if a determination had to be made by both courts, under either statute, there is no requirement that Defendant be ordered to participate in the restoration program. This restoration program focuses on criminal proceedings in this Court. The State acknowledges that had the Family Court had a similar program, it would not have filed Defendant's charges here. Since DSCYF has remedied this issue as of the date of this writing, ordering Defendant to enroll in a program geared to this Court would only lead to confuse him and the Court does not see any benefit to order his participation.

11

Therefore, this Court adopts the prior and comprehensive determination from the Family Court that Defendant remains not competent to stand trial. The Court now turns to the State's next argument that Defendant should not be permitted to have a reverse amenability hearing if deemed not competent.

### *Competency and the Right to a Reverse Amenability Hearing*

The reverse amenability process is meant to identify those juveniles charged as adults who are amenable to the rehabilitative processes of the Family Court.[19] If the juvenile files a motion to transfer the adult charges, this Court *shall* hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[20] However, the State argues the reverse amenability hearing cannot proceed because Defendant cannot meaningfully participate in this hearing. This Court finds that the State's position is contrary to the statutory language of 10 *Del. C.* § 1011(b).

Often, a reverse amenability hearing may be delayed because the defendant challenges his competency to stand trial after he has been charged in this Court. In

---

[19] *See generally* 10 *Del. C.* §§ 1010–11 (2013 & Supp. 2016). *See Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

[20] 10 *Del. C.* § 1011(b), (c)(2) (stating that "[b]efore ordering any such transfer, the Superior Court *shall* hold a hearing at which it may consider evidence as to the following factors . . . ." and that "[t]he hearing *shall* be held by the Superior Court as soon after such application is made as is practicable." (emphasis added)). *See also State v. Harper*, 2014 WL 1303012, at *5–7 (Del. Super. Mar. 31, 2014).

12

those cases, the defendant may run the risk that he reduces the likelihood of transfer to the Family Court when he or his defense counsel decides to challenge competency. That is not the case here.

The State knew in July of 2017 that Defendant was not competent at age thirteen when it decided to charge him in this Court. The provisions are clear under 10 *Del. C.* § 1011(b) that this Court must hold a hearing upon his request. On this record, the State fails to provide any legal or factual basis to suggest this case should be considered any differently from juveniles deemed competent to stand trial. To find that his competency status precludes him from any consideration to transfer to Family Court creates a dangerous Catch-22 position for juveniles charged with adult offenses. Under the State's rationale, a juvenile charged in Superior Court would refrain from challenging competency because to do so would force them to forego the ability to be heard on their transfer back to Family Court. The result would not only run against the provisions of 10 *Del. C.* § 1011(b), it would be akin to a *de facto* waiver of all competency challenges.

This Court finds that where the State sought to bring charges against a "child" deemed not competent under 10 *Del. C.* § 1007, it fails to establish why this competency status precludes his right to an amenability hearing. Defendant is entitled to the same judicial review afforded to competent juveniles charged with adult offenses who seek consideration for transfer under 10 *Del. C.* § 1011(b).

13

## STANDARD OF REVIEW

On Defendant's Motion to Transfer, the Court must weigh the factors set forth in 10 *Del. C.* § 1011(b).[21] Under § 1011(b), the Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;" (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court;" and, the catch-all provision to include any "other factors which, in the judgment of the Court are deemed relevant."[22]

## DISCUSSION

### *Fair Likelihood of Conviction*

This Court considers the following evidence: a stipulation of Defendant's alleged conduct that gave rise to the charges, an Updated Evaluation of Competence to Proceed in Family Court dated July 11, 2017, a Psychological Evaluation dated December 12, 2017 from Dr. Belcher-Timme, and the report and testimony of Jennifer Skinner, Master Family Service Specialist on behalf of YRS, who was the only witness presented at the hearing. Both sides stipulate, for purposes or reverse amenability only, that there is a fair likelihood of Defendant's conviction if he

---

[21] *See, e.g., id.*

[22] 10 *Del C.* § 1011(b).

14

proceeded to trial. The Court now turns to an analysis of the statutory factors outlined in § 1011(b).

### *Weighing § 1011(b)'s Four Factors*

## I. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

The first § 1011(b) factor is two-pronged. Defendant faces one count of Assault First Degree, two counts of Reckless Endangering and three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), as well as a Possession of a Handgun by a Prohibited Juvenile. The State argues that not only are the charges serious, this factor weighs against a transfer because the charges cannot be adjudicated if his competency is not restored.

It is true that under § 1007A, "the Court, after a hearing to consider the best interests of the child and safety of the community, *shall*"[23] order dismissal after the specified statutory period of time lapses. The Court understands the potential implications under § 1007A if Defendant remains not competent—the Family Court must order dismissal when the statutory period runs.[24] The Superior Court

---

[23] 10 *Del. C.* § 1007A(c)(3) (emphasis added).

[24] Under 10 *Del. C.* § 1007A(c)(3), if there is not a reasonable expectation that the child can restore or acquire competency, "the Court, after a hearing to consider the best interests of the child and the safety of the community, *shall*: . . . [d]ismiss violent felony charges at age 18, unless the child was under age 14 at the time of arrest for violent felonies in which case the Court shall consider dismissal of violent felonies within 18 to 36 months." (emphasis added).

competency statute has no such mandatory provisions. The Court does not consider the policy implications raised by the obvious disparities of the two statutes that address the disposition of cases for individuals that are not competent to stand trial. There are various procedural and substantive differences between 10 *Del. C.* § 1007(A) and 11 *Del. C.* § 404, but it is for the General Assembly to determine to what extent they wish to reconcile these statutes related to future young offenders. As to this prong, this Court finds that regardless of his competency issues, the charges are both serious and violent and weigh against a transfer.

The second prong of this first factor looks to Defendant's prior record. Defendant's criminal "history" is short with a span of two years that began at age eleven. Ms. Skinner testified that Defendant demonstrated signs of maturity since his last placement and recommended that Defendant is amenable to the rehabilitative processes of the Family Court.[25] The State argues that Defendant's prior record reflects escalating impulsive and violent behavior. Before detained at age thirteen, Defendant demonstrated signs of recklessness and extremely dangerous risk-taking. His alleged gang involvement and drug use/sales confirm his susceptibility to negative influences and outside pressures.

---

[25] Report of Jennifer Skinner, Master Family Service Specialist, YRS at 15 (submitted Dec. 12, 2017).

Defense counsel countered that Defendant's behavior aligns with what the Supreme Court of the United States has identified, in other contexts, as the "mitigating qualities of youth."[26] This Court has previously referenced the *Roper, Graham* and *Miller* decisions to highlight conceptually that the Supreme Court of the United States has considered issues related to the brain development of adolescents. Even our own Supreme Court has considered the "'major advances' in neuroscience," discussing how the Supreme Court of the United States was aware "when it decided *Roper* that children do not transform into psychologically- and neurologically-mature adults on their eighteenth birthdays."[27] While there is much written about a juvenile's proclivity to act impulsively and irresponsibly due to innumerable intrinsic and extrinsic factors,[28] the Supreme Court of the United States

---

[26] *Miller v. Alabama*, 567 U.S. 460, 476 (2012) (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)).

[27] *Zebroski v. State*, 2018 WL 559678, at *4 (Del. Jan. 25, 2018).

[28] *Roper v. Simmons* and its progeny reflect the greater attention that has been placed on the peculiarities inherent in juvenile conduct. *See Roper v. Simmons*, 543 U.S. 551 (2005). *See also Montgomery v. Louisiana*, 136 S.Ct. 718 (2016); *Miller*, 567 U.S. 460; *Graham v. Florida*, 560 U.S. 48 (2010). This Eighth Amendment jurisprudence recognizes that juveniles possess a "lack of maturity and . . . underdeveloped sense of responsibility" that leads to reckless, impulsive, and needless risk-taking. *Roper*, 543 U.S. at 569 (quoting *Johnson*, 509 U.S. at 367). They "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers. *Id.* (citing *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)). Juveniles have limited "control . . . over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Id.* (citing Laurence Steinberg & Elizabeth S. Scott, *Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty*, 58 AM. PSYCHOLOGIST 1009, 1014 (2003)). And because a child's character is not as "well formed" as an adult's, his traits are "less fixed" and his actions are less likely to be "evidence

17

addressed these factors in the context of an 8th Amendment framework. These constitutional considerations were argued by defense counsel in this case but no evidence was submitted regarding these weightier considerations. Therefore, this Court does not need to consider how his competency status might affect considerations regarding maturity, impulsivity, etc., except to state that the evidence was undisputed that Defendant will not easily or maturely transform into adulthood if left to his own volition without services.

This Court finds that as to the first factor, it splits in favor of both sides in that the first prong weighs in favor of keeping the charges in this Court and the second weighs in favor of transfer.

## II.  Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

As to the second factor, however, there is little evidence of past treatment except for scattered attempts to address his mental and behavioral health needs. It was not until July of 2017 that the psychologists in this case opined that Defendant is not competent. Had he remained in the Family Court under 10 *Del. C.* § 1007, we may have more information about the success or failure of treatment efforts. Yet, despite the minimal YRS treatment and lack of PBH involvement, Ms. Skinner testified that Defendant has done well while detained and recommends that this

---

of irretrievabl[e] deprav[ity]." *Id.* at 570 (citing ERIK H. ERIKSON, IDENTITY: YOUTH AND CRISIS (1968)).

18

factor weighs in favor of a transfer. No evidence was presented to suggest otherwise, such that this factor weighs in favor of a transfer.

**III.   Section 1011(b) Factor Three: Interests of Society and Defendant**

In determining whether the interests of society and of the defendant are best served by the transfer, this Court is guided by *State v. Johnson* where the Superior Court had determined that it was not in the interest of society "to place the remaining charges in Family Court for treatment Defendant does not need and that [DYRS] cannot provide . . . ."[29]   Here, Ms. Skinner testified that access to services are available to him through PBH or YRS, regardless of whether competency is restored or acquired.

If competency is restored, there are several targeted rehabilitative programs available to Defendant through the Ferris School as well as a list of community-based services for Defendants adjudicated delinquent of firearm offenses. Ms. Skinner also detailed the services available to Defendant through the Family Court and that he would have the benefit of such services through YRS, if found competent, through age nineteen. If Defendant remains not competent, the mental health sister division of PBH can provide resources through age eighteen.[30]   With

---

[29] *State v. Johnson*, 2012 WL 2835024, at *4 (Del. Super. Ct. 2012).

[30] *Id.*

19

another four or five years of potential services, the Family Court is in the best position to order PBH's involvement, regardless of Defendant's competency issues associated with this case.[31]

By contrast, in this Court, at age fourteen, even if he acquires competency, DOC cannot offer the same opportunities for treatment and rehabilitation. The record established that providers contracted by YRS can only serve youth assigned to their supervision through Family Court. Were Defendant to remain not competent, the adult mental health system is not equipped to manage his adolescent mental health issues. Where violent behavior is a common denominator throughout Defendant's criminal history, society has an interest in ensuring that the agency equipped to handle these types of cases are able to do so. Thus, this Court finds that both the interests of society and Defendant weigh in favor of a transfer, where the reliance is on DSCYF to service Defendant and for the Family Court to order it accordingly.

---

[31] Ms. Skinner's recommendation is based in part on Defendant's "continued stipulation of not competent." She identifies that Defendant "has stipulated to not competent in Family Court since 2015, and most recently on 1/4/17." Report of Jennifer Skinner, Master Family Service Specialist, YRS at 14–15 (submitted Dec. 12, 2017).

## IV. Section 1011(b)'s Catchall Provision: Other Factors Which, in the Judgment of the Court Are Deemed Relevant

The final, miscellaneous consideration is "other factors which, in the judgment of the Court are deemed relevant" under § 1011(b) focuses on how Defendant entered the adult system, and this Court's inability to address his competency deficits. The Court considers the lesser of two evils—to send the case back may be a legal exercise in futility, but to keep it here is worse.[32]

The first evil is if Defendant returns to the Family Court. If he remains not competent, his cases remain pending on a Competency Calendar without adjudication. Presumably, he will now enter into a restoration program, and regardless of the outcome, he will receive treatment under § 1007(A). PBH can be ordered to remain open with him until he ages out or, if his competency is restored, his cases will be adjudicated and he will be eligible to receive five years of rehabilitation from YRS to age nineteen. Either way, DSCYF is involved and, at age fourteen, it makes sense for these critical services to be provided by the agency best equipped to deliver them.

---

[32] The Court considered severing his offenses to allow both courts to retain jurisdiction. However, because Defendant's charges are "inextricably intertwined" to the underlying felonies, basic principles of joinder and severance under Superior Court Criminal Rules 8 and 14 lead this Court to consider judicial economy considerations to maintain all charges in one court.

The second evil is Defendant stays here. As much as the Court understands the decision to charge Defendant as an adult, this system is not equipped to service a child with his mental and behavioral deficits. While it may be that the State envisioned that this Court would retain some level of supervision over Defendant, part of this factor that weighed into this Court's decision is that the State was more focused on jumpstarting the competency restoration process than it was focused on seeing that Defendant face the minimum mandatory consequences of these charges. As such, it is likely that the State contemplated a resolution whereby both courts remained involved.

Competent juveniles who exhibit violent behavior have benefited from a blended resolution that allows both the Family Court to provide services followed by continued supervision through this Court. Although these resolutions are often created through "split" or "blended" pleas, they come about through plea negotiations if the State wishes to extend such offers. Here, the benefits of a split or blended plea are offered to a juvenile who is able to knowingly, intelligently and voluntarily enter into a plea agreement. Unfortunately, this option is not available to Defendant because he is not competent to enter into any agreement with the State, even if such an offer was extended.

Competency, if ever, may take years to restore or acquire. While the State may think it best to keep him at the New Castle County Detention Center awaiting this

result, leaving him there without treatment is the greater evil. Age appropriate treatment should be afforded to anyone accused of an offense deemed not competent to stand trial, regardless of their age. Because Defendant cannot receive the requisite treatment in this Court that would ordinarily be afforded to similarly situated not competent juveniles who remain in Family Court under 1007(A) or not competent adults under § 404 who would go to DPC, this factor weighs in favor of transfer.

Therefore, considering all factors under 10 *Del C.* § 1011(b), as to the nature of the present offense and the extent and nature of the defendant's prior record, factor one splits both ways. The nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto weighs in favor of a transfer. The interests of society and Defendant are best served by a transfer to the Family Court where the DSCYF can take a more holistic approach to address Defendant's cases and needs. Finally, relevant to this analysis is that the adult system is not equipped to address the needs of a fourteen-year-old deemed not competent to stand trial. All evidence presented by the witnesses who testified in this matter concurred that Defendant is amenable to the Family Court. Thus, Defendant's charges should be sent back to the Family Court for disposition.

## CONCLUSION

The provisions of 10 *Del. C.* §1007(A) are best suited to address Defendant's competency issues in the Family Court and this Court need not re-determine

23

Defendant's competency to stand trial. Defendant's competency does not preclude his right to a reverse amenability determination as mandated under 10 *Del C.* § 1011(b). Under 10 *Del C.* § 1011(b), the factors weigh in favor or a transfer. For the reasons stated above, Defendant's Motion is **GRANTED**.

**IT.IS SO ORDERED.**

Judge Vivian L. Medinilla

oc: Prothonotary
cc: Defendant
    Jennifer Skinner, Master Family Service Specialist
    Philip M. Casale, Esquire
    Monica G. Germono, Esquire
    Office of Investigative Services