# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
      v. ) ID Nos. 1911015539
)      2001004704
WILLIAM ACKRIDGE, )
)
   Defendant. )

## MEMORANDUM OPINION

Submitted: November 19, 2020
Decided: January 12, 2021

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court*,
**GRANTED.**

Jillian Schroeder, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

John Barber, Office of Defense Services, Wilmington, Delaware. *Attorney for Defendant.*

**MEDINILLA, J.**

# I. INTRODUCTION

Defendant William Ackridge at 17 years of age[1] stands accused of Assault First and Second Degrees, Reckless Endangering First Degree, Conspiracy Second Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Possession, Purchase, Own or Control of a Firearm (Handgun) by a Prohibited Juvenile.[2] He seeks to transfer his charges to Family Court under 10 *Del. C.* § 1011 and challenges whether the State has established its burden of proof positive or presumption great for the PFDCF charges under 11 *Del. C.* § 1447A(f). Upon consideration of the reverse amenability hearing held on November 19, 2020, the parties' submissions, oral arguments, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **GRANTED**.

# II. FACTUAL AND PROCEDURAL HISTORY[3]

The charges stem from two separate incidents in November 2019. The first involved a shooting at the Kingswood Community Center in Wilmington. The second occurred in Defendant's residence days later where it is alleged that a firearm discharged when Defendant tossed it out of his bedroom window. Detectives from

---

[1] Defendant's date of birth is February 22, 2003.
[2] *See* Indictment, True Bill Filed. No. 29, *State of Delaware v. William Ackridge,* Crim. I.D. No. 2001004704, D.I. 1 (Del. Super. Ct. Aug. 10, 2020); Indictment, True Bill Filed, No. 40, *State of Delaware v. William Ackridge*, Crim. I.D. No. 1911015539, D.I. 3 (Del. Super. Ct. Mar. 2, 2020).
[3] This recitation is based upon oral argument and evidence presented at the reverse amenability hearing on Defendant's Motion to Transfer on November 19, 2020.

both Wilmington and New Castle County Police Departments testified as witnesses for the State regarding both incidents.

Detective McNasby first testified that he observed Defendant and several young men on an Instagram Messaging video on November 25, 2019. Defendant was one of two men pointing a weapon into the camera. Since Defendant was on probation at the time, the officer executed warrants and arrived at his residence later that evening.

With the assistance of four detectives and a SWAT team, he testified that upon arriving at the rear of the house, he heard a loud bang followed by another. He then observed a window screen drop from a second story window followed by a trail of smoke. He testified that he believed the second bang was the sound of a gun. SWAT officers in front of the house went into the residence and saw Defendant coming down the stairs of the residence wearing the same clothes as seen in the Instagram video. It was later determined that the Defendant's belongings were located in the bedroom from where the screen fell and the loud bangs were heard. Other adults were in the house and firearms were located in Defendant's sister's room. In the yard were a loaded firearm, impact crates and pieces of brass projectile.

Upon further investigation, law enforcement determined that the spent casings matched others found in a Silver Kia, later determined stolen. Police suspected that

the vehicle, found adjacent to Defendant's residence, was involved in a shooting two days prior. This incident forms the second set of charges.

Detective Anthony Ford of the Wilmington Police Department testified that on November 23, he responded to a shots-fired incident at the Kingswood Community Center where two victims were on the scene and a third had self-transported to Wilmington Hospital. Surveillance footage shows a silver vehicle stopped in front of the center. The community center's camera footage depicts that the vehicle stops, multiple flashes are seen, then numerous people scatter. The vehicle had characteristics similar to the stolen Kia. A search of the vehicle yielded 9mm spent casings on the driver side floor. The spent casings, collected and tested by Delaware State Police, matched the firearm found in Defendant's yard.

Law enforcement also searched Defendant's phone and discovered multiple searches made to the "Delawareonline" website hours after the Kingswood incident. Text messages on Defendant's phone show attempts to obtain a firearm. His cell phone was off at the time of the shooting. His GPS location was unknown at the time of the shooting because the battery was not charged.

On November 25, 2019, Wilmington Police charged Defendant with four counts of Reckless Endangering First Degree, Possession of a Firearm During the Commission of a Felony, and Possession of a Firearm by a Person Prohibited. As to the Kingswood incident, on August 10, 2020, Mr. Ackridge was indicted on a

4

Rule 9 Warrant by a New Castle County Grand jury with 2 counts of Assault First Degree, 2 counts of Reckless Endangering First Degree, Possession of a Firearm During the Commission of a Felony, Conspiracy Second Degree, Assault Second Degree, and Possession of a Firearm by a Person Prohibited.

Detained in New Castle County Detention Center since November 2019, he asks to transfer his case to Family Court. His sole witness is psychologist Dr. Robin Belcher-Timme, Psy.D., ABPP. In addition to the two aforementioned witnesses, the State called Jennifer Wilson on behalf of the Division of Youth Rehabilitative Services ("YRS") of the Department of Services for Children, Youth & Their Families ("DSCYF"). The parties stipulated to the introduction of Dr. Timme's and Ms. Wilson's reports. A reverse amenability hearing took place on November 19, 2019.

## STANDARD OF REVIEW

The reverse amenability process is meant to identify juveniles charged as adults who are amenable to the rehabilitative processes of the Family Court.[4] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[5]

---

[4] *See generally* 10 *Del. C.* §§ 1010-11; *see also Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).
[5] *See, e.g.*, *State v. Harper*, 2014 WL 1303012, at *5–7 (Del. Super. Mar. 31, 2014).

The Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;"[6] (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;"[7] (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]"[8] and (4) any "other factors which, in the judgment of the Court are deemed relevant."[9]

## III.   DISCUSSION

### A. Fair Likelihood of Conviction

Before weighing the Section 1011(b) factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile."[10] The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[11] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[12]

---

[6] 10 *Del. C.* § 1011(b)(1).
[7] *Id.* at § 1011(b)(2).
[8] *Id.* at 1011(b)(3).
[9] *Id.* at § 1011(b).
[10] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[11] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[12] *Id.*

Since Defendant is also charged for Possession of a Firearm During Commission of a Felony, 11 *Del. C.* § 1447A(f), as amended, requires the Court to find proof positive or presumption great that the accused used, displayed or discharged a firearm during the commission of a felony.[13] This provision entitles a juvenile defendant to an evidentiary hearing and allows the firearm charges to be transferred back to Family Court if the Court does not find proof positive or presumption great that the juvenile used, displayed, or discharged a firearm during the commission of a felony.[14] The proof positive or presumption great standard is commonly understood as whether "after [a] full hearing 'there is good ground to doubt the truth of the accusation.'"[15] If so, then "the Court in its discretion [may] conclude[] from the evidence that the State does not have a fair likelihood of convicting the accused of the . . . offense[s]."[16]

In the Kingswood shooting, the most the State establishes is that a car and a firearm were near Defendant's house. The stolen Kia was located adjacent to Defendant's residence and ballistic evidence in the vehicle matches a firearm in

---

[13] 11 *Del. C.* § 1447A(f) ("Every person charged under this section over the age of 16 years who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or a Title 31 violent felony as set forth in § 4201 (c) of this title, shall be tried as an adult, notwithstanding any contrary provisions or statutes governing the Family Court or any other state law. The provisions of this section notwithstanding, the Attorney General may elect to proceed in Family Court.").

[14] *See* 11 *Del. C.* § 1447A(f).

[15] *See In re Steigler*, 250 A.2d 379, 382 (Del. 1969) (internal quotations omitted).

[16] *Id.* at 383 (noting that the proof 'positive or presumption great' language is imprecise).

Defendant's yard. Yet, the State fails to place Defendant at the scene, let alone in the vehicle at the time of the shooting. Witnesses were wholly uncooperative, and no GPS nor cell phone evidence tracks Defendant to Kingswood. The video footage does not capture the persons in the vehicle. Therefore, the State cannot establish that Defendant used, displayed or discharged a firearm during the commission of the felony assault and reckless endangering charges under 11 *Del. C.* § 1447A(f).

As for the second set of charges, the State's evidence also fails to establish proof positive or presumption great that Defendant used, displayed or discharged a firearm. The State charges that Defendant recklessly endangered officers when a firearm discharged after or when he threw it out of a window. Upon arriving at the back of Defendant's residence, one of several row homes, the detective testified he *believed* one loud bang sounded like a gun. A gun is found in the yard although no one saw the weapon drop from the room where the screen fell.

Though circumstantial evidence may support a finding that the loaded weapon was thrown from a second-story room, there is no evidence that Defendant was in the room from where the sounds came or the screen falls. Other adults were in the home at the time. More importantly, there is no evidence that Defendant had upon him a weapon. The Instagram evidence establishes that Defendant displayed incriminating videos of himself with an alleged weapon earlier that day. But these

8

prior actions cannot extend to implicate him for the events that unfolded at his residence later that evening.

To prosecute a juvenile in this Court for PFDCF, 11 *Del. C.* § 1447A(f) requires that the State establish more than actual or constructive possession. It must establish that the juvenile displayed, discharged or used the firearm. Accepting the State's theory that Defendant attempted to get rid of the weapon, it cannot establish that he displayed or discharged the weapon, especially since the State alleges that the firearm must have discharged upon impact after it was tossed. As for whether Defendant "used" the weapon, use is defined as "to avail oneself of: employ."[17] Here, at best the State can establish that Defendant was trying to abandon the weapon, not avail himself of it or employ it.

Under 11 *Del. C.* § 1447A(f), the Court does not find proof positive or presumption great that Defendant used, displayed or discharged a firearm during the commission of a felony to maintain jurisdiction of the firearm charge. After reviewing the totality of the evidence presented, there is not a fair likelihood that Defendant would be convicted of the charged offenses. Therefore, the State has not met its burden of demonstrating a *prima facie* case against Defendant with a fair

---

[17] *Use*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/use (last visited Jan. 12, 2021).

likelihood of conviction at trial. For the remaining charges, the factors also weigh in favor of transfer to Family Court.

## B. Weighing § 1011(b)'s Four Factors

### 1. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

The first § 1011(b) factor is two-pronged.[18] The first prong of the first factor inquiries into the nature of the present offenses that, by definition and virtue of being before this Court, are violent and serious, and weighs against transfer. Yet the second prong weighs in favor of transfer. With adjudications of delinquency that include theft of a motor vehicle and resisting arrest, his criminal record began only two years before he was charged as an adult.

### 2. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

Extensive medical history from Nemours Children's Hospital memorializes Defendant's diagnosis of traumatic brain injury ("TBI") from 2012 when Defendant hit a tree while on a minibike. He suffered a subdural hematoma, right frontal-temporal bone fractures and trauma services required intensive care treatment.

Dr. Timme's report outlines the lingering effects therefrom and opines that "The behavioral disinhibition, emotional reactivity, impulsivity, and other clinical features of these allegations could be contributed to in no small part by the effects

---

[18] *See* 10 *Del. C.* § 1011(b)(1).

10

of a severe Traumatic Brain Injury (TBI), the experience of acute or chronic trauma, or a combination of the two diagnostic categories."[19]

Despite the well-documented medical history, since November 2019, NCCDC has not provided treatment. The reason offered by the detention center is that Defendant failed to self-report or request services. The explanation belies logic. Even if one assumes that someone with a brain injury understood his medical needs, it is unlikely that a teenage detainee would have the ability to request services to address them.

The following excerpt from Dr. Timme's psychological evaluation says it all:

Similarly, despite the availability of medical records documenting the severity of William's TBI, and recommending ongoing neuropsychological assessment and treatment, there is no indication in the records provided to the undersigned that those services were ever offered or arranged…[and] no indication that he has been identified as potentially having a Neurocognitive Disorder….

It is premature and clinically inappropriate to declare that treatment and rehabilitative efforts have been exhausted or even adequately considered, when [Defendant] has never even had an evaluation completed by the Division of Prevention and Behavioral Health Services (PBHS)…[T]here has been no systematic means of evaluating William's clinical and criminogenic needs, and then assigning an appropriate treatment and programming plan to meet those needs. This is in line with the clinical recommendation of Dr. Haas, William's treating physician in the Department of Rehabilitative Medicine at AI DuPont. *In fact, Dr. Haas stated, "We have been advocating for neuropsych assessment for years."* It is strongly recommended that William's clinical needs be thoroughly evaluated through a neuropsychological assessment, specifically in an effort to identify the extent of what William *will not* do versus what he *can not* do, potentially, and to conceptualize his amenability to treatment accordingly."[20]

---

[19] Report of Robin Belcher-Timme, Psy.D., ABPP, Licensed Psychologist, Report at 9.
[20] Report of Dr. Timme at 10-11.

The Court accepts Dr. Timme's opinion that Defendant is amenable to Family Court services.[21] Although he will turn 18 in February, a neuropsychological assessment as ordered will serve to inform treatment options for Family Court. This prong weighs in favor of transfer to Family Court.

### 3. Section 1011(b) Factor Three: Interests of Society and Defendant

In addition to his TBI, Defendant has witnessed friends murdered. Given the gang-related affiliations and the chronic exposure to trauma brought about by such activities, it is not surprising that his juvenile record reflects escalating impulsive and violent behavior. Yet, while detained, Defendant has earned Gold shirt status— the highest behavioral phase under the CBT Behavioral Model. He has not yet received Level V programming at YRS. It is in the interest of society and Defendant to give him the benefit of the same and allow Family Court to place him in age-appropriate programming. Since the State may seek extended jurisdiction until Defendant turns twenty-one,[22] this factor weighs in favor of transfer.[23]

### CONCLUSION

The State has not established proof positive or presumption great that Defendant used, displayed or discharged a firearm during the commission of the

---

[21] *Id.* at 12.

[22] 10 *Del. C.* § 928(a) ("Prior to trial upon Petition of the Attorney General, the State may seek extended jurisdiction of the Family Court over a juvenile up to age 21.").

[23] The fourth factor of § 1011(b)—other relevant factors the Court deems relevant—has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in its opinion. 10 *Del. C.* § 1011(b).

felonies for which he stands charged under 11 *Del. C.* § 1447A(f). Thus, the State has not established a fair likelihood of conviction. As to the remaining charges, the enumerated factors under 10 *Del. C.* § 1011(b) weigh in favor of transfer. In light of the undisputed record, the Court has ordered a neuropsychological assessment in the hopes it will reviewed by the Family Court.

Defendant's Motion to Transfer Charges to Family Court is **GRANTED**.

**IT IS SO ORDERED.**


/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc: Prothonotary
cc: John Barber, Esquire
Jillian Schroeder, Esquire
Dr. Robin Belcher-Timme, Psy.D., ABPP
Jennifer Wilson, Master Family Service Specialist
Jennifer Skinner, Master Family Service Specialist