# IN THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Crim. ID No. 2104011001 |
| | ) | |
| SAVION BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Submitted: November 2, 2021
Decided: November 9, 2021

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**GRANTED.**

Colleen Durkin, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for State*.

Meghan E. Crist, Esquire, Assistant Public Defender, Office of Defense Services, Wilmington, DE. *Attorney for Defendant.*

**MEDINILLA, J.**

# I.  INTRODUCTION

Defendant Savion Brown (Defendant) stands accused of Rape in the First Degree, Conspiracy in the First Degree, Rape in the Second Degree, and Conspiracy in the Second Degree.[1]  The allegations stem from an incident reported and investigated in June of 2019 when Defendant was approximately sixteen years old.[2] Currently almost nineteen years of age, he seeks to transfer his charges to Family Court under 10 *Del. C.* § 1011.  For the reasons fully set out at the hearing and upon consideration of the parties' submissions, oral argument, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **GRANTED.**

## II.  FACTUAL AND PROCEDURAL HISTORY[3]

At the reverse amenability hearing held on November 2, 2021, the State presented one witness, Chief Investigating Officer Detective Danielle Watson of the Wilmington Police Department.  She testified that on June 17, 2019, the police were summoned to Christiana Hospital regarding a report of sexual assault.  The assault was alleged to have occurred one week prior on June 10, 2019, at the residence of then seventeen-year-old S.B.[4]  Defendant was sixteen at the time as was his co-

---

[1] *See* Indictment, True Bill, D.I. 1.
[2] Defendant's date of birth is January 18, 2003.
[3] This recitation is based upon oral argument and evidence presented at the reverse amenability hearing on Defendant's Motion to Transfer on November 2, 2021.
[4] Given the alleged victim's age in 2019 and for purposes of this ruling, the victim's name will remain anonymous.

defendant Jayden Gordon ("Gordon"). An eyewitness, Brandon Johnson ("Johnson"), was fifteen years of age at the time.

Detective Watson testified that S.B. was in her home when Gordon asked if he and Defendant could come over, claiming that Defendant had been locked out of his residence. S.B. had been in a relationship with Gordon for six months and so she agreed. When Defendant and Gordon arrived at S.B.'s home, they watched television in the basement. S.B. and Gordon then went upstairs and engaged in consensual sexual intercourse. During this time, Defendant let Johnson into the house. When S.B. and Gordon returned to the basement, the teens continued to watch a movie. Detective Watson indicated that while in the basement, S.B. consumed two-and-a-half or three shots of alcohol.[5] Soon after, S.B. and Gordon again went upstairs to engage in sexual intercourse.

Johnson and S.B. were consistent in their accounts that while S.B. and Gordon engaged in sexual intercourse the second time, FaceTime communications were taking place between the four teens. It is unclear who initiated the communication, but during the exchange it is alleged that Gordon told Defendant and Johnson to head upstairs where they were having sex. S.B. told the officers that when she overheard Defendant say, "bro we're coming upstairs" that she interjected and said "No."

---

[5] The accounts of the consumption of alcohol varied between S.B. and Johnson where either the boys did not drink or if they did, it was only Defendant who may have shared half of a shot with S.B.

S.B. and Gordon continued engaging in sexual intercourse when Defendant and Johnson entered her bedroom. Johnson stayed in a corner or outside of the room and recorded the encounter on his phone. At some point, Gordon stopped having sex with S.B. and Defendant began engaging in sexual intercourse with her. Due to the sexual position, S.B. alleged that she did not initially realize it was Defendant who was having sex with her. When she realized who it was, she states she immediately yelled for him to stop. Detective Watson testified that S.B. reported to her that Defendant did not do so until Gordon told Defendant to "chill."

In her July 5, 2019, interview with Detective Watson, S.B. claimed she found out approximately one week after the incident that a video was circulating in school that depicted the events in her room. S.B. did not see the video but identified for police that a friend told her about the video. When Detective Watson interviewed this individual, she told Detective Watson that she only heard about the video but had not seen it and that the person who had seen it was not going to cooperate. For reasons unrelated to this incident, the video was never acquired by the police as a factory reset had wiped out the contents of Johnson's phone.

For various reasons that included delays due to COVID-19, Johnson was not interviewed until fourteen months later in September of 2020. Johnson stated that Defendant and Gordon had discussed plans to visit Gordon's "jump-off" (sex partner) and Gordon expressed intentions of having sex with S.B. According to

4

Johnson, Gordon and Defendant also discussed ways that Defendant could also initiate having sexual intercourse with her after Gordon. However, he was not present when Gordon and Defendant initially entered S.B.'s house and was unable to provide a statement about what the three of them may have discussed prior to his arrival.

On May 10, 2021, eight months after Johnson was interviewed, Defendant was indicted by the Grand Jury of Rape First Degree, Rape Second Degree and the accompanying Conspiracy charges. Defendant filed a Motion to Transfer on June 25, 2021. The Court held the hearing on November 2, 2021.

### III. STANDARD OF REVIEW

The reverse amenability process is meant to identify juveniles charges as adults who are amenable to the rehabilitative process of the Family Court.[6] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[7] The Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;"[8] (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response

---

[6] *See generally* 10 *Del. C.* §§ 1010-11; *see also Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).
[7] *See*, *e.g.*, *State v. Harper*, 2014 WL 1303012, at *5-7 (Del. Super. Mar. 31, 2014).
[8] 10 *Del. C.* § 1011(b)(1).

5

thereto, if any;"[9] (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]"[10] and (4) any "other factors which, in the judgment of the Court are deemed relevant."[11]

## IV.  DISCUSSION

### A. Fair Likelihood of Conviction

Before weighing the § 1011(b) factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile."[12] The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[13]  Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[14]

The State has met its *prima facia* case as to all charges.  The evidence presented establishes that Defendant joined Gordon and S.B. while they were engaged in a sexual encounter.  As alleged, it was done so without her consent. Though there are discrepancies in the versions provided, at this juncture, there is a fair likelihood of conviction.

---

[9] *Id.* at § 1011(b)(2).
[10] *Id.* at § 1011(b)(3).
[11] *Id.* at § 1011(b).
[12] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[13] *Id.*
[14] *Id.*

**Weighing § 1011(b)'s Four Factors**

The purpose of "determining a juveniles amenability is to place a judicial check on the prosecutorial charging of juveniles."[15]  However, 10 *Del. C.* § 1010 states that when a juvenile is charged with the crime of Rape in the First Degree or Second Degree, among others, a child shall be proceeded against as an adult.[16] Therefore, "since a juvenile charged with a designated felony in the Superior Court has lost the benefit of Family Court adjudication by statutory pronouncement, there is a presumption that need exists for adult discipline and legal restraint.  Hence, the burden is upon the juvenile to demonstrate to the contrary."[17]  In considering whether the factors weigh in favor of transfer, Defendant has met his burden.

1. **Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record**

The first § 1011(b) factor is two pronged.[18]  Here, charges of Rape First and Second degrees weigh against transfer.  Yet as to the second prong, it weighs in favor of transfer as Defendant has never been charged nor adjudicated delinquent.  He has

---

[15] *Id.* at *4 (citing *State v. Anderson*, 697 A.2d 379, 383 (Del. 1997)).
[16] *See* 10 *Del. C.* § 1010(a)(1).
[17] *Harper*, 2014 WL 1303012, at *4 (quoting *Anderson*, 385 A.2d at 740) (internal quotations omitted); *see also State v. Mayhall*, 659 A.2d 790, 795 (Del. Super. 1995) ("I also take into consideration the fact that by including second degree murder in those offenses where original jurisdiction has been conferred on the Superior Court under 10 *Del. C.* § 1010 the legislature has created a rebuttable presumption that juveniles charged with that crime should be tried as adults and the burden of proof rests with each defendant to rebut that presumption.").
[18] *Id.*

no criminal record.  Therefore, this factor splits and weighs neither for nor against transfer.

### 2. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

Since Defendant has never been active with YRS, there is no record of past treatment nor history of rehabilitative efforts through YRS.  What we know is that he is currently on adult pretrial supervision.  While on supervision, his officer reported that Defendant has been compliant and respectful.

Laura Cooney-Koss, Psy. D. testified and provided a nineteen-page report. For reasons more fully stated on the record, she opines that Defendant is amenable to the services of Family Court.[19]  Furthermore, Dr. Cooney-Koss stated that placing Defendant in a residential facility with adults or youth would be counter to his needs based on the risk assessments that demonstrated his needs could and should be met through YRS and community supervision.[20]  Her testimony was unrebutted.  This factor weighs in favor of transfer.

### 3. Section 1011(b) Factor Three: Interest of Society and Defendant

Dr. Cooney-Koss further opined that Defendant's sophistication-maturity tests yielded results that suggest he is at a higher level compared to other youth in

---

[19] *See* Psychological Evaluation by Laura Cooney-Koss, Psy.D., at 17 (Oct. 25, 2021).
[20] *See id.*

the juvenile justice setting.[21] At age eighteen, he is a high school graduate, works full-time, has remained with a girlfriend of three years, and enjoys the involvement of supportive parents. He is scheduled to begin college in Florida on a football scholarship. Though his conduct at age sixteen, if proven beyond a reasonable doubt, was inexcusably egregious, the evidence presented supports a finding that he can rehabilitate. Therefore, it is not in his best interest to remain in this Court.

As for society's interest, Dr. Cooney-Koss further opined that Defendant does not pose a risk to the community and is expected to instead be an asset.[22] The expert conducted a risk assessment which demonstrated Defendant has "a significantly lower degree of risk as compared to other juvenile offenders."[23] Dr. Cooney-Koss further testified Defendant is not at risk of sexual recidivism. She performed a sexual risk assessment which scored him on 20 different factors, concluding that his results "are extremely favorable" and youth, like the Defendant, who fall predominately in the protective category "generally do not require inappropriate sexual behavior treatment."[24]

Jennifer Skinner of YRS (who testified in a different capacity) testified that YRS has a Sexual Behaviors Unit specialized in providing age-appropriate resources

---

[21] *Id.*
[22] *Id.*
[23] *Id.* at 12.
[24] *Id.* at 18.

for juveniles facing similar type offenses. Since he is not active with the Division, she could only provide testimony as to the services that could be provided should he return to Family Court. Accordingly, she testified that although residential services could only be provided to Defendant until the day before his nineteenth birthday, community supervision is available to him until age twenty-one. And given her review of Dr. Cooney-Koss' opinion regarding risk, it would be likely that no residential placement would be warranted for Defendant and community supervision would be appropriate. For these reasons, the Court finds this factor weighs in favor of transfer.[25]

## V. CONCLUSION

The Court does not fault the Wilmington Police for the delay in investigating this case, especially during the pandemic. The *years* of delay however not only resulted in the destruction of video evidence but, for purposes here, impacts rehabilitation. It is impossible to consider whether the conduct of a sixteen-year-old requires rehabilitation where the evidence presented was that of an almost nineteen-year-old. Perhaps if he had been charged sooner, this Court's review would have been unnecessary and, with no prior record, Defendant would have been adjudicated in Family Court with a wider rehabilitation window.

---

[25] The fourth factor of § 1011(b) – other factors the Court deems relevant – has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in this ruling.

Today, now nearly nineteen, the unrebutted evidence suggests that the passage of time and Defendant's entry into the criminal justice system has perhaps rehabilitated him. At the very least, it appears to have sent a message. It remains to be seen whether time and the bitter taste of adult charges will sufficiently keep Defendant out of our criminal justice system. But there is hope. . . and time. With community supervision, YRS can still provide services, if needed, until age twenty-one.

Under § 1011(b), the Court finds that the factors weigh in favor of transfer. For the reasons stated above, Defendant's Motion to Transfer Charges to Family Court is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc:  Prothonotary
cc:  Defendant
     Department of Justice
     Office of Defense Services

11