# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
    v. ) I.D. No.: 2301000600
)
GAMHAI ROGERS )

Submitted: November 15, 2023
Decided:  December 19, 2023

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court –*
**DENIED.**

Lindsay Taylor, Esquire, Deputy Attorney General, Dover, Delaware. *Attorney for the State of Delaware.*

Zachary George, Esquire, Dover, Delaware. *Attorney for Defendant Gamhai Rogers.*

**GREEN-STREETT, J.**

1

## I.    Introduction

Defendant Gamhai Rogers faces charges of Attempted Murder in the First Degree, Possession of a Firearm during Commission of a Felony ("PFDCF"), two counts of Possession of a Firearm by a Prohibited Juvenile, seven counts of Reckless Endangering in the First Degree, Conspiracy in the First Degree, Conspiracy in the Second Degree, Resisting Arrest, and Receiving Stolen Property.[1]  These alleged offenses occurred on January 2, 2023, when Mr. Rogers was 16 years old.[2]  Mr. Rogers requested transfer of these charges to Family Court under 10 Del. C. § 1011.[3] This Court held reverse amenability hearings on October 25, October 27, and November 6, 2023.  Upon consideration of the parties' written submissions, the parties' oral argument, and the record in this case, the Court finds that the § 1011(b) factors do not weigh in favor of transferring Defendant's companion charges to Family Court.  Therefore, Defendant's Motion to Transfer Charges to Family Court is **DENIED**.

---

[1] Def.'s Pet. for Reverse Amenability Hearing Pursuant to 10 Del. C. § 1011 at 1-2; see also Case ID No. 2301000600 D.I. 4 (Mr. Rogers's indictment).

[2] Id. at 1.

[3] Id. at 3.

## II.  Factual Background

The charges in this case stem from a shooting allegedly perpetrated by Mr. Rogers and his co-defendant in a residential neighborhood.  The main victim in this case, Isaac Jones, reported that a man in a silver car shot at him.[4]  The police recovered 36 shell casings in the area of the shooting.  Bullets struck several houses in the residential neighborhood.[5]

When police located a vehicle matching the suspect vehicle's description, Mr. Rogers was among those individuals who attempted to flee the car.[6]  Police observed Mr. Rogers discard a handgun before his arrest.[7]  When interviewed by police with his mother present, Mr. Rogers admitted to shooting at the victim.[8]  Mr. Rogers stated that he went with his co-defendant to "sho[o]t at the guy who [had] shot at me."[9]  Mr. Rogers justified the shooting by saying the victim "came at me first."[10]  Regarding his intent to kill the victim, Mr. Rogers remarked, "[i]f it went that way,

---

[4] State's Ex. 4 at 7.

[5] Id.

[6] Id.

[7] Id.

[8] Id.

[9] Id. at 13.

[10] Id.

3

it would have went that way."[11]  Mr. Rogers has been held at Stevenson House Detention Center since his arrest on January 2, 2023.

## III.  Standard of Review

"[T]he reverse amenability process under section 1011 protects children by [ensuring] that they are adjudicated in the correct forum."[12]  "When a juvenile files a motion to transfer all or some of the charges leveled against him, the Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 Del. C. § 1011(b)."[13]

Before considering the § 1011(b) factors, the Court must first find that the State has established a *prima facie* case against the juvenile.[14]  This finding means the Court must determine that the State has demonstrated that "a real probability [ ] exist[s] that a reasonable jury could convict the juvenile based on the totality of the evidence, assuming that the evidence introduced at the hearing is unrebutted by the juvenile at trial."[15]

---

[11] Id.

[12] Hughes v. State, 653 A.2d 241, 248–49 (Del. 1994), as clarified (Jan. 30, 1995).

[13] State v. Bailey, 2017 WL 838223, at *3 (Del. Super. Mar. 2, 2017), as corrected (Mar. 10, 2017).

[14] Id.

[15] State v. Harper, 2014 WL 1303012, at *5 (Del. Super. Mar. 31, 2014).

If the Court determines the State has established a *prima facie* case against the defendant, then the Court must weigh the factors set forth in 10 Del. C. § 1011(b). The Court may consider evidence of (1) "[t]he nature of the present offense[,] and the extent and nature of the defendant's prior record, if any;"[16] (2) "[t]he nature of past treatment and rehabilitative efforts[,] and the nature of the defendant's response thereto, if any;"[17] and (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court."[18] The Court may also consider any "other factors which, in the judgment of the Court[,] are deemed relevant."[19]

## IV.    **Discussion**

### A.    **Fair Likelihood of Conviction and Proof Positive of PFDCF**

As a threshold issue, the Court finds there exists a "fair likelihood of conviction" in this case. The facts are relatively straightforward and largely undisputed. Mr. Rogers admitted to possessing and firing a gun in his interviews

---

[16] 10 Del. C. § 1011(b)(1).

[17] 10 Del. C. § 1011(b)(2).

[18] 10 Del. C. § 1011(b)(3).

[19] 10 Del. C. § 1011(b).

with the police[20] and Dr. Mechanick.[21]  The shooting occurred in a residential neighborhood, with the gunfire striking several occupied houses.[22]  Mr. Rogers explained the shooting as retaliation for a shooting that targeted him the previous day.[23]  Mr. Rogers stated that he went with his co-defendant to shoot at the person they believed to be responsible for shooting at Mr. Rogers.[24]  Mr. Rogers fled the scene of the shooting in a stolen car.[25]  Although Mr. Rogers ultimately complied with police instruction to stop, he briefly attempted to avoid arrest.[26]  Should this evidence be presented at trial unrebutted, there exists a real possibility that a reasonable jury would convict Mr. Rogers.  Thus, the State has made its *prima facie* case.

As Mr. Rogers is also charged with PFDCF, Delaware law requires the Court to find "proof positive or presumptive great that the accused used, displayed, or

---

[20] Det. Bowie's Supplemental Report to State's Ex. 1 at 3.

[21] State's Ex. 4 at 12-13.

[22] State's Ex. 1 at 8-9.

[23] State's Ex. 4 at 13.

[24] Id.

[25] Det. Bowie's Supplemental Report to State's Ex. 1 at 3.

[26] Id. at 2-3.

discharged a firearm during the commission of a Title 11 or Title 31 violent felony."[27] The Court must hold an evidentiary hearing to determine if, "after [a] full hearing[,] 'there is good ground to doubt the truth of the accusation.'"[28] If so, then "the Court[,] in its discretion [,] [may] conclude [ ] from the evidence that the State does not have a fair likelihood of convicting the accused of the offense."[29] As Mr. Rogers admits to both possessing and firing a gun, the Court finds proof positive or presumption great that Mr. Rogers used a firearm during the commission of, at least, Reckless Endangering in the First Degree.

## B.     Weighing § 1011(b)'s Four Factors

Mr. Rogers occupies dual identities in this case – he is both a youth in need of rehabilitation and an adult offender. For the purposes of the PFDCF charges, he remains an "adult" offender who is expected to answer to those charges exclusively under the jurisdiction of this Court. Notwithstanding this mandate, the analytical framework available under § 1011(b) asks this Court to weigh certain factors to determine if this now 17-year-old Defendant may still be amenable to rehabilitative

---

[27] 11 Del. C. § 1447A(f). See also 11 Del. C. § 4201(c)(1) (for an enumerated list of felonies designated as violent felonies, noting Conspiracy First Degree, Reckless Endangering First Degree, and Murder in the First Degree are all designated violent felonies).

[28] State v. Sharpe, 2020 WL 119647, at *3 (Del. Super. Jan. 10, 2020) (citing In re Steigler, 250 A.2d 379, 382 (Del. 1969) (internal quotations omitted)).

[29] Sharpe, 2020 WL 119647, at *3 (citing Steigler, 250 A.2d at 383 ("[t]he term proof positive or presumption great is not precise in its command") (internal quotations omitted)).

services available to him through Family Court.  Stated another way, this Court must contemplate the logic and efficacy of two courts' involvement in the disposition of Mr. Rogers's case.

### 1. Section 1011(b)'s Catchall Provision: Any Factors Deemed Relevant

The Court begins its analysis of § 1011(b)'s four factors with the factor traditionally addressed last.  "Under this factor, the Court may consider any factors which, in the judgment of the Court are deemed relevant."[30]  This "catchall" factor permits the Court to reflect on a wide range of information when determining the optimal way to handle a juvenile's case.  During the reverse amenability hearings, a great deal of time was spent by attorneys for both sides on Defendant's alleged gang involvement.

Mr. Rogers submitted a report by Lisa Taylor-Austin, a consultant possessing knowledge of, and professional experience with, street gangs.[31]  Ms. Taylor-Austin testified on Mr. Rogers's behalf.  Ms. Taylor-Austin provided background information on street gangs generally, including an explanation of the different levels of gang involvement;[32] how law enforcement utilizes databases and validation sheets

---

[30] Bailey, 2017 WL 838223, at *4 (internal quotations omitted).

[31] Def.'s Ex. 5.

[32] Id. at 5.

to track alleged gang members;[33] and how youth are typically deemed gang-affiliated.[34] Ms. Taylor-Austin opined that the process used by the Dover Police Department ("DPD") to classify Mr. Rogers as a gang member "raise[d] several concerns."[35] In her opinion, the photographs used by DPD – and believed to confirm Mr. Rogers's gang identity – do not establish Mr. Rogers's gang membership to any degree of certainty.[36]

Ms. Taylor-Austin pointed out that Mr. Rogers showcased gang signs belonging to rival gangs across the pictures, which a gang member would be unlikely to do.[37] She concluded that Mr. Rogers associates with gang members, but does not belong to a gang himself.[38] She further noted that, because most gang members "remain gang involved for a short time period," Mr. Rogers should be "adjudicated in juvenile court."[39]

---

[33] Id. at 6-7.

[34] Id.

[35] Id. at 8.

[36] Id. at 10-15.

[37] Id. at 13-14.

[38] Id. at 23.

[39] Id.

Detective Robert Cunningham prepared the Gang Member Validation Worksheet pertaining to Mr. Rogers.[40] Detective Cunningham was called to testify by the State. Detective Cunningham serves as the DPD Gang Intelligence Coordinator, and oversees the collection of intelligence relating to gang activity.[41] Detective Cunningham concluded that Mr. Rogers belongs to the "8 Block" and "Sex Money Murder" gangs.[42] Detective Cunningham based his conclusion on Mr. Rogers's social media activity, Mr. Rogers's affiliation with known gang members, and two separate confidential informants identifying Mr. Rogers as a gang member.[43]

The Court highlights the gang component of Mr. Rogers's case not because it finds it to be dispositive – but because Mr. Rogers's alleged gang involvement or affiliation provides the backdrop against which the Court considers the other factors. The State posits that Mr. Rogers's gang involvement likely will continue for years to come, and that involvement makes him less amenable to treatment.[44] Mr. Rogers

---

[40] Def.'s Ex. 1.

[41] Def.'s Ex. at 3.

[42] Def.'s Ex. 1 at 2.

[43] Id. at 1-2.

[44] State's Mem. in Opp'n of Mot. for Reverse Amenability at 11.

contends that he does not belong to a gang, and simply lives in an area affected by gang life and membership.[45]

It appears to the Court that, at best, Mr. Rogers is a gang affiliate. At worst, he may be an active gang member. Either way, Mr. Rogers's alleged gang involvement is not dispositive and does not factor heavily into the Court's calculus, in part, because of the inconsistencies of the evidence presented.

Mr. Rogers's age and rehabilitation opportunities do factor heavily into the Court's calculus. Because Mr. Rogers is over the age of 17, he remains eligible for programming with Youth and Rehabilitative Services ("YRS") for about 18 remaining months.[46] Further, given that the PFDCF charge must remain in this Court, YRS will not engage with Mr. Rogers because he has a charge pending in this Court.[47] "This catch-22 effect of [YRS's] administrative policies hamstrings this Court's analysis."[48] As YRS will not provide treatment for Mr. Rogers, regardless of his amenability, transferring any of Mr. Rogers's charges back to Family Court would likely only impede his access to treatment.

---

[45] Def.'s Ex. 5 at 23.

[46] State's Ex. 33 at 4.

[47] State's Mem. in Opp'n of Mot. for Reverse Amenability at 5.

[48] Bailey, 2017 WL 838223, at *6.

Therefore, as to the "catchall" provision, this Court finds this factor weighs against transfer. Although Mr. Rogers's status as a gang member remains in question, the Court cannot overlook the realities of YRS's policies. As the PFDCF charge must remain in this Court, and because that charge forecloses YRS treatment of Mr. Rogers, efficiency and practicality mandate that all of Mr. Rogers's charges remain together in one Court.[49]

### 2. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

"The first §1011(b) factor is two-pronged."[50] The first prong of the first factor inquires into the nature of the present offenses that, by definition and virtue of being before this Court, are violent and serious.[51] The nature of the present offenses weighs against transfer, as Mr. Rogers is charged with several violent felonies including attempted murder.

Mr. Rogers's prior record also weighs against transfer. Although only adjudicated delinquent of three misdemeanor offenses,[52] Mr. Rogers's behavior

---

[49] Given the Court's finding on the "catchall" § 1011(b) factor, the Court recognizes that analysis of the remaining factors presents as a somewhat *pro forma* exercise. 10 Del. C. § 1011(b) directs this Court, however, to engage in precisely that exercise.

[50] Sharpe, 2020 WL 119647, at *6 (citing 10 Del. C. §1011(b)(1)).

[51] Sharpe, 2020 WL 119647, at *6.

[52] State's Mem. in Opp'n of Mot. for Reverse Amenability at 8.

appears to be escalating. Records from the Division of Family Services evidence impulsive and poor decision making in recent years, up to and including his present set of charges.[53] The nature of Mr. Rogers's present offenses, coupled with his escalating behavior, leaves the Court gravely concerned about Mr. Rogers's current path. Accordingly, both prongs of the first factor of § 1011(b) weigh against transfer.

### 4. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

The second § 1011(b) factor asks the Court to consider the nature of any past treatment administered to Mr. Rogers, as well as his response to said treatment.[54] Defense counsel argues, without objection or opposition by the State, that Mr. Rogers has received only limited treatment.[55] In reviewing the record, the Court notes that YRS minimally engaged with Mr. Rogers; however, it appears that Mr. Rogers never received the extensive services that his behavior warranted. The Court also notes that, although Mr. Rogers has largely complied with the rules of Stevenson House, his behavior remains problematic, as he has been involved in several

---

[53] State's Ex. 4 at 5.

[54] 10 Del. C. § 1011(b)(2).

[55] Def.'s Mem. in Supp. of his Mot. for Reverse Amenability at 3.

13

altercations while incarcerated.[56]  Lastly, when engaged with YRS, the Court notes that Mr. Rogers failed to comply with previous terms of probation.[57]

Nevertheless, as the record lacks any indication of formal treatment, the Court cannot find that Mr. Rogers did not respond well to treatment.  Similarly, the Court cannot determine that Mr. Rogers would not be receptive to future treatment.  Thus, this factor weighs in favor of transfer.

### 4.    Section 1011(b) Factor Three:  Interests of Society and Defendant

The third § 1011(b) factor considers the interests of society, and of Mr. Rogers, in transferring the remaining charges to Family Court.[58]  Mr. Rogers faces several violent felony charges, including PFDCF.  Delaware law requires that specific charge to remain in Superior Court, as Mr. Rogers was over the age of 16 at the time of commission and used the firearm during the commission of an enumerated violent felony.[59]  Additionally, as outlined above, YRS will not provide services to Mr. Rogers while he faces a pending charge in Superior Court.[60]  Similarly, Family Court will not proceed with any charges against Mr. Rogers until his case in Superior Court

---

[56] Def.'s Ex. 6 at 22.

[57] State's Ex. 33 at 3.

[58] 10 Del. C. § 1011(b)(3).

[59] 11 Del. C. § 1447A(f).

[60] State's Mem. in Opp'n of Mot. for Reverse Amenability at 10.

resolves.[61]  Thus, keeping all of Mr. Rogers's charges together in this Court serves his best interest by allowing for a quicker and more efficient resolution of his case.

Given Mr. Rogers's escalation of behavior, despite previously facing charges in Family Court, society's best interests are also served by his case remaining in this Court.  Whether "merely impulsive behavior attributable to juvenile behavior" or something more sinister, the Court finds it is in the best interest of society to keep Mr. Rogers in this Court – "where he can transition more smoothly into adulthood" while monitored.[62]  This factor weighs against transfer.

## V.  Conclusion

The Court finds that the State has established proof positive or presumption great that Mr. Rogers used a firearm during the commission of a violent felony under 11 Del. C. § 1447A(f).  The State has also shown a fair likelihood of conviction. After weighing the factors enumerated under 10 Del. C. § 1011(b), the Court finds that transfer of Mr. Rogers's remaining charges to Family Court is inappropriate. Therefore, Defendant's Motion to Transfer Charges to Family Court is **DENIED**.

---

[61] Id.

[62] Sharpe, 2020 WL 119647, at *5.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge